IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,599

In the Interest of N.E., a Minor Child.

SYLLABUS BY THE COURT

1.

Appellate courts have only the jurisdiction provided by law. That means appellate courts lack jurisdiction to review a district court's decision unless a party has appealed in the time and manner specified by law. Whether jurisdiction exists is a question of law subject to unlimited review.

2.

K.S.A. 38-2273(a) governs appellate jurisdiction under the Revised Kansas Code for the Care of Children, K.S.A. 38-2201 et seq. That statute limits appealable orders to any order of temporary custody, adjudication, disposition, finding of unfitness, or termination of parental rights. An order that does not fit within these five categories is not appealable.

3.

Appeals under K.S.A. 38-2273(a) must be brought within 30 days of the district court entering judgment.

4.

The Revised Kansas Code for the Care of Children distinguishes between "custody" and "placement." Orders that address the custody of a child during the dispositional phase of a child-in-need-of-care proceeding are dispositional orders,

1

which are appealable under K.S.A. 38-2273(a). Orders during the dispositional phase that address only the placement of the child are not appealable under K.S.A. 38-2273(a).

5.

The Revised Kansas Code for Care of Children establishes a framework of sequential steps towards permanency in the child's placement. An order terminating parental rights is the last appealable order under K.S.A. 38-2273(a). Post-termination orders that address custody are not dispositional orders and are not subject to appellate review.

6.

Generally, issues not raised before the district court cannot be raised on appeal. But this preservation rule is prudential, and appellate courts have recognized three notable exceptions to the rule. To satisfy the preservation rule, a party must either provide a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on in the district court, or if the issue was not raised below, there must be an explanation why the issue is properly before the court. A party who ignores this requirement is considered to have waived and abandoned the issue on appeal.

7.

The doctrine of stare decisis provides that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised. The application of stare decisis ensures stability and continuity—showing a continuing legitimacy of judicial review. Thus, courts do not lightly disapprove of precedent. While stare decisis is not an inexorable command, this court endeavors to adhere to the principle unless clearly convinced that a rule of law established in its earlier cases was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 5, 2021. Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Opinion filed September 9, 2022. Judgment of the Court of Appeals dismissing the appeal is affirmed.

*Mitchell F. Engel*, pro hac vice, of Shook, Hardy & Bacon, LLP, of Kansas City, Missouri, argued the cause, and *Vanessa Dittman*, pro hac vice, and *Abilgail Lawson*, pro hac vice, of the same firm, and *Travis J. Ternes*, of Watkins Calcara, Chtd., of Great Bend, were with him on the briefs for appellant maternal grandmother.

*Jennifer L. Harper*, assistant district attorney, argued the cause, and *Thomas Stanton*, district attorney, was with her on the brief for appellee.

The opinion of the court was delivered by

WALL, J.:  N.E. was four months old when the State took her into protective custody and placed her with a foster family. We refer to her by initials in this opinion because she is a minor. See Kansas Supreme Court Rule 7.043 (2022 Kan. S. Ct. R. at 50). Over the next year and a half, the district court held child-in-need-of-care (CINC) proceedings under the Revised Kansas Code for the Care of Children (Revised Code), K.S.A. 38-2201 et seq. During those proceedings, N.E.'s grandmother sought custody of N.E. When the district court denied Grandmother's request, she appealed to a panel of the Court of Appeals, which dismissed the appeal for lack of jurisdiction.

We granted Grandmother's petition to review the panel's jurisdictional holding. The Revised Code's appellate jurisdiction statute, K.S.A. 38-2273(a), limits which district court decisions may be appealed in a CINC proceeding. That jurisdictional statute, as construed under our precedent in *In re N.A.C.*, 299 Kan. 1100, 329 P.3d 458 (2014), bars appellate review of each of the district court orders from which Grandmother has

3

appealed. The doctrine of stare decisis warrants our continued adherence to *In re N.A.C.* Thus, we affirm the judgment of the Court of Appeals and dismiss the appeal for lack of jurisdiction.

FACTS AND PROCEDURAL BACKGROUND

The circumstances that led to the Department for Children and Families (DCF) taking custody of N.E. are tragic, but they are not the focus of this appeal. To answer the jurisdictional question, we concentrate on the district court proceedings under the Revised Code, which the Legislature enacted in 2006 to address the custody and care of a minor. See L. 2006, ch. 200, § 1. Specifically, we focus on those facts relevant to, and proceedings conducted under, the portion of the Revised Code that applies when a young child is taken into protective custody—the CINC proceedings.

We do not ordinarily discuss the legal framework in this section of the opinion. But here, a general understanding of the statutory scheme governing CINC proceedings is important to place the facts and district court proceedings in their proper context and to fully appreciate their significance to the jurisdictional question raised in this appeal.

CINC proceedings unfold in a specific, temporal order. See 299 Kan. at 1110-15. First, during the temporary-custody phase, a district court decides whether it should temporarily place the child in the custody of specific persons or entities listed by statute, such as the Secretary of DCF. See K.S.A. 38-2243(f), (g)(1). Second, during the adjudication phase, the district court determines whether the child meets one or more statutory definitions of a "child in need of care." See K.S.A. 38-2202(d)(1)-(14) (defining a child in need of care); K.S.A. 38-2251 (providing for adjudication). Third, during the dispositional phase, the district court enters orders that address the custody and case planning of a child adjudicated as a "child in need of care." K.S.A. 38-2253(a). Fourth, during the termination phase, the district court decides whether a parent is "unfit" under

4

several statutory factors and whether it is in the best interests of the child to terminate parental rights. See K.S.A. 38-2269(a)-(g)(1). Finally, if the court decides to terminate parental rights, then during the post-termination phase, the district court facilitates placement of the child in a permanent family setting, whether through adoption or the appointment of a permanent custodian. See K.S.A. 38-2269(g)(2) (providing options for district court after termination of parental rights).

With one important exception noted below, N.E.'s case followed the typical progression of CINC proceedings under the statutory framework described above. Those proceedings began in August 2019, when the State took protective custody of N.E., and they ended in January 2021, when Grandmother appealed and N.E. was adopted by her foster family.

*Temporary Custody Phase*

During the temporary-custody phase in August 2019, the district court temporarily placed N.E. in the custody of DCF, which immediately placed N.E. with a foster family. For reasons that will become important later, we note that the temporary custody order placed conditions on DCF's ability to make a "kinship care placement." Under the Revised Code, a "placement" is the decision by the individual or agency having custody of the child about "where and with whom the child will live." K.S.A. 38-2202(z). A "kinship care placement," then, is a placement "in the home of an adult with whom the child or the child's parent already has close emotional ties." K.S.A. 38-2202(q). The district court imposed two conditions on such placements. First, it ordered that DCF could make no short-term kinship placements without the approval of the guardian ad litem, the court-appointed attorney who represents the child's interests in a CINC proceeding. See K.S.A. 38-2205(a) (providing for appointment of attorney for the child in a CINC proceeding). Second, the court ordered that DCF could make no long-term

5

kinship placements unless a "kinship assessment" had been completed and the court had scheduled a review hearing.

Grandmother appeared in person at the temporary custody hearing. And the district court provided "the parents, grandparents and/or interested parties, who were present at [the] hearing . . . with informational materials pertaining to their respective rights and responsibilities in connection with the proceedings." But nothing in the record suggests that Grandmother objected to the placement limitations in the temporary custody order at that time. Nor did Grandmother appeal from the temporary custody order. See K.S.A. 38-2273(a) (permitting the appeal of "any order of temporary custody").

*Adjudication Phase*

During the adjudication phase in September 2019, the district court adjudicated N.E. as a child in need of care. In its September 19th Journal Entry and Orders of Adjudication and Disposition, the district court found that N.E. met three of the statutory definitions of a child in need of care. The district court also specified that its previous findings and orders would remain in effect. Neither parent contested the district court's adjudication of N.E. as a child in need of care. Grandmother did not appear at the adjudication hearing. And nothing in the record suggests that she objected at that time to the adjudication of N.E. as a child in need of care or to the district court's continuation of its previous findings and orders. As with the temporary custody order, Grandmother did not appeal the order of adjudication. See K.S.A. 38-2273(a) (permitting the appeal of an adjudication order).

*Dispositional Phase*

The dispositional phase began when the district court ordered N.E. to remain in the custody of DCF as part of its September 19, 2019 Orders of Adjudication and

Disposition. As noted, DCF had exercised its custodial authority by placing N.E. with a foster family. But six to nine months into the dispositional phase, two events added complexity to these CINC proceedings. First, in March 2020, the COVID-19 pandemic impacted the way courts could safely conduct judicial proceedings in Kansas courtrooms. In response, our court entered administrative orders suspending "statutory time standards or deadlines applying to the conduct or processing of judicial proceedings." See, e.g., Administrative Order 2020-PR-016 (imposing statewide restrictions on judiciary operations effective March 18, 2020). Second, in May 2020, Grandmother engaged counsel and became significantly more involved in the proceedings.

*Grandmother Requests Placement*

The order and timing of the later proceedings is important to our jurisdictional analysis. In March 2020, a supervisor at St. Francis Ministries, the social-service agency managing N.E.'s case on behalf of DCF, informed the district court that Grandmother wanted DCF to place N.E. in Grandmother's home, rather than with the foster family. After gathering input from the parties, the district court issued an April 30th email ruling finding that placement with Grandmother was not in N.E.'s best interests.

*Grandmother Moves for Custody and Other Procedural Developments*

On May 22, 2020, Grandmother's counsel filed a motion for interested party status and custody of N.E. In the motion, Grandmother noted that a permanency hearing had been scheduled for June 4, and that neither permanent placement, termination of parental rights, nor adoption had yet been completed. Thus, Grandmother argued that she had a right to be heard as an interested party seeking custody and placement of N.E. Grandmother did not request a stay of, or otherwise object to, the court's setting of the permanency hearing for June 4.

7

While Grandmother's custody motion was pending, the district court conducted a hearing on June 4, 2020, to evaluate progress towards a permanent placement of N.E. Grandmother appeared by counsel at the permanency hearing. After the hearing, the district court entered its June 15th Permanency Hearing Journal Entry and Order. There, the district court found that reintegration with N.E.'s parents was not a viable permanency objective and adoption might be in N.E.'s best interests. Thus, the district court ordered the State to file a pleading to terminate parental rights, and it determined that a new permanency plan should be submitted to achieve the goal of adoption. The district court also found that N.E.'s needs were being adequately met in her current placement with the foster parents and such placement continued to be in N.E.'s best interests. Based on these findings, on June 17, the State moved to find N.E.'s parents unfit and to terminate their parental rights. See K.S.A. 38-2264(i) (directing the State to move to terminate parental rights within 30 days of district court's finding on reintegration).

Meanwhile, two other significant developments occurred. First, the district court entered an order on June 11, 2020, memorializing the finding from its April 30th email ruling that placement with Grandmother would not be in N.E.'s best interests. Grandmother would later appeal from this June 11th placement order. Second, on June 19, the district court entered a scheduling order setting Grandmother's custody motion for an evidentiary hearing on August 4. And three days later, on June 22, the district court set the State's motion to terminate parental rights for hearing on August 20.

But things did not go as scheduled. The day before the hearing on Grandmother's custody motion, the State's attorney asked for a continuance because she was quarantined pending the results of a COVID-19 test. The district court reluctantly rescheduled the hearing for September 8, 2020. Nothing in the record suggests Grandmother objected to this continuance or the new date set for the evidentiary hearing on her custody motion.

*Termination Phase*

Though Grandmother's custody motion remained pending, the court moved on to the termination phase of the CINC proceedings and conducted an evidentiary hearing on the State's motion to terminate parental rights on August 20, 2020. At the hearing, N.E.'s father relinquished his parental rights, and after making the statutorily required findings, the district court terminated the parental rights of N.E.'s mother. The district court findings and conclusions were memorialized in the August 28th Finding of Unfitness and Order Terminating Parental Rights. There, the district court terminated parental rights and ordered N.E. to remain in DCF custody for adoption proceedings. See K.S.A. 38-2270(a)(1) (permitting district court to place child with DCF for adoption if adoption is viable after the termination of parental rights).

Grandmother appeared in person and through counsel at the August 20th termination hearing. But the transcript of this hearing is not included in the record. Thus, there is no evidence to suggest Grandmother objected to the district court's decision to proceed with the termination hearing on August 20 while her custody motion was still pending. Nor did she move to continue the August 20th termination hearing. Likewise, there is no evidence to suggest Grandmother objected in district court to the State's motion to terminate parental rights or to any of the findings, conclusions, or orders memorialized in the August 28th Findings of Unfitness and Order Terminating Parental Rights. Even so, Grandmother would later appeal from this order.

*Post-Termination Phase*

After the district court terminated parental rights, N.E.'s CINC proceedings moved to the post-termination phase. At the end of the termination hearing on August 20, 2020, the district court scheduled a permanency hearing for September 3. But on August 27, Grandmother moved to continue that permanency hearing to September 8, the date set for

9

the evidentiary hearing on her custody motion. By scheduling "the matters to be heard at the same time," Grandmother argued the continuance would promote judicial economy. Grandmother also argued that if the district court made a permanency decision before ruling on her custody motion, it could render her motion moot, depriving Grandmother "of her day in Court" and the opportunity to be given "substantial consideration as a placement option" for N.E. The district court agreed to continue the permanency hearing and to conduct a consolidated hearing on permanency and Grandmother's custody motion on September 8.

But the COVID-19 pandemic continued to impact the post-termination phase of the CINC proceedings. On September 4, 2020, the State moved to continue the consolidated hearing on permanency and Grandmother's custody motion because one of the State's witnesses was in quarantine. In its motion, the State confirmed that neither the guardian ad litem nor Grandmother objected to the requested continuance. The district court granted the State's motion and reset the consolidated hearing for October 9.

On October 9, 2020, the district court conducted an evidentiary hearing on Grandmother's custody motion. But the district court did not hear from all interested parties because counsel for the foster parents was in quarantine and unable to attend. Thus, the district court took Grandmother's custody motion under advisement and continued the permanency hearing to November 13. But as the November hearing approached, foster parents moved for a continuance because their expert witness was unavailable and out of state. Counsel for foster parents explained that her recent COVID-19-related illness had prevented her from securing the witness' availability and attendance for the November 13th hearing. The district court found good cause to continue the consolidated hearing both because "grandmother's attorney is ill and a witness for the foster parents is unavailable." The district court reset the hearing for December 18.

Grandmother filed a letter to the district court on December 3, 2020, requesting a ruling on her motion for interested party status and custody of N.E. On December 10, the district court ruled on that request in its journal entry clarifying findings. There, the district court determined that Grandmother had interested party status by law and that no order was needed to memorialize this status. The district court then found that it had rejected Grandmother's request for placement of N.E. in its June 11th order. The district court had agreed to hear more evidence at the October 9th hearing on Grandmother's custody motion. But after the October 9th hearing, the district court had taken Grandmother's custody motion under advisement, rather than ruling on the merits, because counsel for foster parents could not attend because of COVID-19. The district court found that it was appropriate to take Grandmother's motion under advisement until all parties had the chance to be heard and "a complete ruling can be made." And it concluded that any timelines governing the adjudication of motions taken under advisement had been suspended by our court's COVID-19 orders.

The district court conducted the evidentiary hearing on permanency and custody on December 18, 2020, as scheduled. All parties and interested parties, including foster parents and Grandmother, appeared in person or through counsel. On December 22, the district court entered its Journal Entry of Permanency Hearing for Child in Need of Care Post-Termination. In this journal entry, the district court found that adequate progress toward the permanency goal of adoption had not occurred and that placement with foster parents was in the best interests of N.E. The district court terminated DCF custody and placed N.E. in the custody of foster parents for adoption. Grandmother would later appeal this order.

The district court entered its journal entry addressing findings under advisement on January 6, 2021. There, the district court again found that Grandmother had "filed a motion for interested party status and a request for change in custody" on May 22, 2020. And while the court had denied Grandmother's request for placement in its June 11th

11

order, it had agreed to hear more evidence on the custody request at the hearing on Grandmother's custody motion in October. But because "counsel for the foster parents was quarantined and unable to be present" at the October evidentiary hearing, the court decided to take the motion under advisement and "not enter further orders until after the permanency hearing scheduled for December 18, 2020[,] at which time the foster parents would have an opportunity to express their intentions and desires to the court." Based on these findings, the district court ruled that all matters taken under advisement had been resolved in the December 22, 2020 journal entry finding that reasonable efforts toward permanency had not been achieved and that changing custody from DCF to foster parents was in N.E.'s best interests. Given this journal entry, the district court found that all matters taken under advisement were moot. Grandmother would later appeal this order.

On the day the district court filed its January 6, 2021 journal entry, the foster parents adopted N.E. in a separate court action in Reno County District Court. It is unclear from the record whether the same district court judge presided over that action. Two days later, on January 8, the district court entered a final order terminating its jurisdiction over the case under K.S.A. 38-2270(c) ("the court's jurisdiction over the child shall cease" when an adoption decree is filed). So ended the district court proceedings in this case.

*Grandmother Appeals*

Five days after the district court terminated jurisdiction, Grandmother appealed to a panel of the Court of Appeals, asking it to vacate N.E.'s adoption, remand the matter for assignment of a new district court judge, and transfer custody of N.E. back to DCF. Grandmother alleged that the district court had committed four errors: (1) it disregarded this state's "familial preference doctrine" and the "substantial consideration" statutorily afforded to grandparents in CINC proceedings; (2) it lacked authority under the Revised Code to limit kinship placements; (3) it rejected Grandmother's petition for custody based

12

on improper, inadmissible, and inaccurate information; and (4) it had not adequately considered what was in N.E.'s best interests, as the Revised Code required.

Perhaps anticipating questions about appellate jurisdiction, Grandmother opened her appellate brief by identifying the four court orders from which she appealed and arguing why the Revised Code granted appellate courts subject matter jurisdiction over each of these orders. As noted, those four orders included: (1) the June 2020 order memorializing the placement findings set forth in the district court's April 2020 email ruling; (2) the August 2020 order terminating parental rights; (3) the December 2020 journal entry memorializing its post-termination permanency findings and conclusions; and (4) the January 2021 journal entry clarifying that the December 2020 journal entry had resolved all matters the district court had taken under advisement.

The panel was not convinced. It dismissed Grandmother's appeal for lack of jurisdiction after holding that none of the orders were appealable under K.S.A. 38-2273(a). *In re N.E.*, No. 123,599, 2021 WL 5144521, at *9 (Kan. App. 2021) (unpublished opinion). Given that outcome, the panel refrained from addressing the merits of Grandmother's appeal. See *In re Estate of Lentz*, 312 Kan. 490, 504, 476 P.3d 1151 (2020) (a court that dismisses for lack of jurisdiction should not opine on the merits).

Grandmother then petitioned our court for review. We granted review of the panel's jurisdictional holding.

ANALYSIS

The task before us is narrow: we must decide whether the panel erred in concluding that Kansas appellate courts lack jurisdiction over Grandmother's appeal.

13

Given that limited scope, we will not address Grandmother's substantive critiques of the district court's decisions.

## I. Legal Framework and Standard of Review

Appellate courts have only the jurisdiction provided by law. *Williams v. Lawton*, 288 Kan. 768, 778, 207 P.3d 1027 (2009). CINC proceedings are civil, and appellate jurisdiction in civil cases is mainly defined by statute. See K.S.A. 38-2201(a); *Wiechman v. Huddleston*, 304 Kan. 80, Syl. ¶ 1, 370 P.3d 1194 (2016). That means appellate courts lack jurisdiction to review a district court order unless a party has appealed in the time and manner specified by law. 304 Kan. 80, Syl. ¶ 1. The existence of jurisdiction is a question of law subject to unlimited appellate review. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1121, 307 P.3d 1255 (2013). Questions involving statutory interpretation are also questions of law subject to unlimited review. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014).

Typically, in civil actions, a party may appeal to the Court of Appeals as a matter of right from "[a] final decision in any action." K.S.A. 2021 Supp. 60-2102(a)(4). But the Revised Code contains its own appellate jurisdiction statute, K.S.A. 38-2273(a). This statute grants appellate courts jurisdiction to review only five types of orders in CINC cases: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." K.S.A. 38-2273(a). The parties agree that Grandmother is an "interested party" to the CINC proceedings because she is N.E.'s grandparent. See K.S.A. 38-2202(m).

We have recognized the history of K.S.A. 38-2273(a) confirms that the "[L]egislature intended to limit appellate jurisdiction to particular categories of orders and to permit interlocutory review of them instead of requiring litigants to wait for final

orders." *In re N.A.C.*, 299 Kan. at 1108. And because K.S.A. 38-2273(a) is the more specific statute, it controls over K.S.A. 2021 Supp. 60-2102(a)(4). 299 Kan. at 1108-09. Thus, K.S.A. 38-2273(a) is the controlling statute that defines the scope of an appellate court's jurisdiction to review CINC orders, and if an order does not fit within the five categories of appealable orders under that statute, "it is not appealable." See 299 Kan. 1100, Syl. ¶ 3.

In *In re N.A.C.*, we held that the Legislature's deliberate sequencing of the stages of CINC proceedings under the Revised Code showed that an order terminating parental rights is the last appealable order in a CINC case. See 299 Kan. 1100, Syl. ¶ 6. Orders entered after termination of parental rights, including orders finding that the state agency has not made reasonable efforts or progress toward adoptive placement and orders removing children from state agency custody and placing them directly with their foster parents, are not appealable under K.S.A. 38-2273(a). 299 Kan. 1100, Syl. ¶ 6.

Appellate jurisdiction to review CINC orders is also limited temporally. To secure appellate jurisdiction, parties must file a notice of appeal from each appealable order specified in K.S.A. 38-2273(a) within 30 days of the district court's judgment. See K.S.A. 38-2273(c) (providing that K.S.A. chapter 60, article 21 governs procedure for appeals under the Revised Code); see K.S.A. 2021 Supp. 60-2103(a) (specifying that the time within which an appeal may be taken must be 30 days from entry of judgment). Failure to timely appeal typically deprives the appellate court of subject matter jurisdiction. See *State v. Hooks*, 312 Kan. 604, 606, 478 P.3d 773 (2021). But in response to the COVID-19 pandemic, our court issued administrative orders on March 18, 2020, suspending all "statutory time standards or deadlines applying to the conduct or processing of judicial proceedings." See Administrative Order 2020-PR-016; see also L. 2020, ch. 4, § 1 (authorizing the Kansas Supreme Court to issue order extending or suspending any deadlines or time limitations established by statute during any state of disaster

15

emergency). Thus, any order the district court entered after March 18, 2020, is not subject to the 30-day statutory deadline for appeal.

Given this legal framework, the controlling question on appeal is whether the orders that Grandmother has appealed fit within any of the five categories of appealable orders specified in the statute, and if applicable, whether Grandmother timely appealed from these orders.

## II. *Appellate Jurisdiction to Review the Challenged Orders*

Having extensively reviewed the Revised Code's statutory scheme and our caselaw interpreting it, we conclude that the orders that Grandmother has challenged are not appealable under K.S.A. 38-2273(a) for three reasons, which we will summarize here and expand upon below.

First, the June 2020 order was not a dispositional order because it concerned a placement decision, not a custody decision, and placement decisions are not appealable under K.S.A. 38-2273(a). Second, despite her assertions to the contrary, Grandmother preserved no claim of error related to the August 2020 order terminating parental rights. Instead, Grandmother challenges the conditions the district court imposed on kinship care placements. But the district court imposed those conditions in its September 2019 temporary custody order. Grandmother failed to appeal the temporary custody order at all, let alone within the statutory deadline in effect at that time. Finally, the December 2020 and January 2021 journal entries were entered during the post-termination phase of the CINC proceedings, months after the district court terminated parental rights. In *In re N.A.C.*, we held that post-termination orders are not appealable under K.S.A. 38-2273(a), and we reaffirm that holding today under the doctrine of stare decisis. 299 Kan. 1100, Syl. ¶ 6. We now discuss these three conclusions in turn.

16

A. *The District Court's June 2020 Order Is Not an Appealable Dispositional Order Under K.S.A. 38-2273(a)*

The first order in the CINC proceedings that Grandmother challenges is the June 2020 placement order. The timeline of events is important here because it confirms the June 2020 order was a placement order, not a dispositional custody order. And K.S.A. 38-2273(a) does not authorize appellate court review of placement orders.

On March 25, 2020, a supervisor at St. Francis Ministries informed the district court that Grandmother wanted "placement" of N.E. The district court did not hold an in-person hearing on that request because, to mitigate the spread of COVID-19, our court had limited district court functions to emergency operations only. Under those orders, a hearing on a placement decision was not classified as an emergency operation. See Administrative Order 2020-PR-016 (enumerating emergency operations in CINC cases).

After reviewing documents submitted to the court in response to Grandmother's placement request and hearing from the parties by email, the district court denied Grandmother's request in an April 30, 2020 email. Then on May 22, Grandmother moved for custody of N.E. And on June 11, 2020, the district court entered the placement order that Grandmother has challenged on appeal. It explained the purpose of the June 2020 order was to "further memorialize findings made by the court and stated in an email on April 30, 2020," and it concluded that placement with Grandmother was not in N.E.'s best interests.

The panel held that the June 2020 order was not a dispositional order subject to appeal under K.S.A. 38-2273(a) because it was not a ruling on Grandmother's custody motion. *In re N.E.*, 2021 WL 5144521, at *8-9. Instead, the panel found that the order was "a summary of the email exchanges between the parties leading to the district court's

17

initial rejection" of Grandmother's request for placement. 2021 WL 5144521, at *9. The law and the record support the panel's conclusion.

The Revised Code distinguishes between the "placement" and the "custody" of a child. Custody is "the status . . . that vests in a custodian . . . the right to physical possession of the child and the right to determine placement of the child, subject to restrictions placed by the court." K.S.A. 38-2202(h). In contrast, placement is "the designation by the individual or agency having custody of where and with whom the child will live." K.S.A. 38-2202(z).

Orders addressing the *custody* of a child that are entered during the dispositional phase of a CINC proceeding are dispositional orders—one of the five types of appealable orders under K.S.A. 38-2273(a). See *In re N.A.C.*, 299 Kan. at 1119. But orders addressing the *placement* of a child are not dispositional orders, and K.S.A. 38-2273(a) does not vest appellate courts with jurisdiction to review such orders. See *In re D.M.M.*, 38 Kan. App. 2d 394, 399, 166 P.3d 431 (2007) ("If the legislature had intended to allow an order regarding a change in placement to be appealable, the legislature could have easily listed this as an appealable order under the statute.").

The record before us makes clear that the June order was not a ruling on Grandmother's May 22, 2020 custody motion. Grandmother did not move for custody of N.E. until May, after the district court had issued its April 30th email ruling denying Grandmother's placement request. And the district court expressly stated that the purpose of the June 11th order was to memorialize the findings from this April email ruling. The June order did not address or modify DCF's custody of N.E. Instead, the court found that moving the minor child to Grandmother's home was not in the child's best interests and ordered that the child remain in foster care where DCF had placed N.E. See K.S.A. 38-2202(z) (defining placement as "the designation . . . of where and with whom the child will live").

18

The developments following the June 2020 order confirm this conclusion. Roughly one week after issuing the June order, the district court issued a scheduling order setting Grandmother's custody motion for an evidentiary hearing on August 4. This setting would have been unnecessary if the district court had ruled on Grandmother's custody motion in its June order. The August setting was later continued to October, when the district court received evidence on the custody motion. The district court took the custody motion under advisement after the October hearing, rather than issuing a ruling. On December 3, Grandmother requested a ruling on her custody motion. Again, Grandmother's request would have been unnecessary if the district court had ruled on her custody motion in the June order. The district court resolved Grandmother's custody motion in its December 2020 post-termination journal entry on permanency and its January 2021 journal entry ruling on matters taken under advisement.

This record, coupled with the Revised Code's definition of "custody" and "placement," confirm that the district court's June 2020 order addressed only Grandmother's March 2020 request for placement of N.E., not the custody of the child. Orders addressing the district court's placement decisions are not appealable under K.S.A. 38-2273(a). Thus, the appellate courts have no jurisdiction to review this order.

> B. *Traditional Rules of Issue Preservation and the Controlling Appellate Jurisdiction Statutes Preclude Grandmother from Using the August 2020 Order Terminating Parental Rights as a Vehicle to Challenge the Placement Limitations Set Forth in the District Court's 2019 Temporary Custody Order*

The second order in the CINC proceedings that Grandmother purports to challenge is the August 2020 order terminating the parental rights of N.E.'s mother and father. In that order, the district court made the requisite findings for a termination of parental rights under K.S.A. 38-2269 (a) and (g)(1) and ordered N.E. to remain in DCF custody for adoption proceedings.

19

We say that Grandmother has only "purported" to appeal from the August 2020 order terminating parental rights because she does not challenge any of the findings, conclusions, or ancillary rulings set forth in that order. Grandmother has not challenged the statutory findings of unfitness, the termination decision itself, or the directive to continue custody with DCF for adoption. In short, Grandmother has challenged nothing in the termination order on appeal.

But even if she had raised a challenge to the termination order on appeal, her arguments would not be properly before this court. Grandmother appeared at the termination hearing in person and by her attorney. But the record on appeal does not include the transcript of the termination hearing, any exhibits introduced at that hearing, or any other submissions Grandmother may have filed in response to the State's motion for findings of unfitness and to terminate parental rights. Thus, there is no evidence to suggest that Grandmother raised any issue or lodged any objection in district court to the State's motion or to the findings and conclusions in the August 2020 termination order.

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Keys*, 315 Kan. 690, 696, 510 P.3d 706 (2022). But this preservation rule is prudential, and appellate courts have recognized three notable exceptions to the rule, including when:

> "(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the trial court may be affirmed because it was right for the wrong reason." *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019).

To satisfy the preservation rule, a party must either provide a "pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court, or "[i]f the issue was not raised below, there must be an explanation why the issue is properly before the court." See Kansas Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36). A party who ignores this requirement is considered to have waived and abandoned any exception to the preservation rule. See *State v. Meredith*, 306 Kan. 906, 909, 399 P.3d 859 (2017).

Grandmother provides no citation to the record where she challenged or objected to the State's motion to terminate parental rights or the district court's termination order. And she has briefed no exception to the preservation rule on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) ("[A]n exception must be invoked by the party asserting the claim for the first time on appeal."). Thus, even if subject matter jurisdiction were proper, Grandmother waived and abandoned any challenge to the termination order. See *State v. Farmer*, 312 Kan. 761, 766, 480 P.3d 155 (2021) (issue treated as waived and abandoned where appellant disregarded Supreme Court Rule 6.02).

Rather than challenging the findings and conclusions in the August 2020 termination order, Grandmother objects to the limitations the district court imposed on short-term and long-term kinship care placements. On appeal, Grandmother contends that the district court lacked statutory authority to impose those placement limitations. She asks the appellate courts to return N.E. to DCF custody so that the agency can make placement decisions free from the extra-statutory constraints.

But the district court imposed these limitations in the temporary-custody order entered at the outset of the CINC proceedings, not in the order terminating parental rights. In the September 2019 temporary custody order, the district court ordered that no short-term kinship care placement will be made without approval of the guardian ad litem. And no long-term kinship care placement could be made until a kinship assessment

21

had been completed and forwarded to the court and a review hearing set. The August 2020 termination order, entered almost one year after the temporary custody order, does not mention these limitations on kinship placement at all. Nor does the termination order continue prior orders of the district court.

Whatever the merits of Grandmother's substantive challenge to the district court's limitations on kinship care placement, the appellate courts have no jurisdiction to evaluate them under the circumstances presented here. K.S.A. 38-2273(a) permits a party or interested party to appeal from "any order of temporary custody." As an interested party, Grandmother could have challenged the kinship care placement limitations by timely appealing from the temporary custody order. Grandmother appeared in person at the temporary custody hearing in August 2019, and the district court advised Grandmother of her rights as an interested party at that hearing. But Grandmother did not appeal that order.

The district court entered the temporary custody order at least six months before our administrative order suspended statutory deadlines in response to the COVID-19 pandemic. Thus, any appeal of the temporary custody order (and the placement limitations in it) had to be filed within the 30-day statutory deadline for appeal. See K.S.A. 38-2273(c) (providing that K.S.A. chapter 60, article 21 governs procedure for appeals under the Revised Code); K.S.A. 2021 Supp. 60-2103(a) (a party must appeal within 30 days of the district court entering judgment). Grandmother's failure to timely appeal from the temporary custody order deprives the appellate courts of jurisdiction to review the kinship care limitations established in that order. See *Wiechman*, 304 Kan. 80, Syl. ¶ 1 (Appellate courts lack jurisdiction to entertain a civil appeal that is not taken within the time limitations prescribed by the applicable statutes.).

Grandmother asserts that the kinship placement limitations in the temporary custody order continued to constrain DCF's placement decisions nearly one year later

when the district court terminated parental rights. Thus, Grandmother contends that she may legitimately challenge those limitations by appealing from the August 2020 termination order. And she notes that her January 2021 notice of appeal is timely, even though filed more than 30 days after the termination order, because the termination order was entered after our court had suspended statutory timelines because of COVID-19.

Grandmother's argument fails for at least two reasons. First, there is no evidence in the record to suggest that the kinship care placement limitations in the temporary custody order remained in force one year later when the district court terminated parental rights. The August 2020 termination order neither references these limitations nor continues the effectiveness of the district court's prior orders. And by law, temporary custody orders are short lived. These orders "remain in effect until modified or rescinded by the court or an adjudication order is entered but not exceeding 60 days, unless good cause is shown and stated on the record." K.S.A. 38-2243(g)(2). The record does not reflect that any party established good cause to extend the temporary custody orders beyond this 60-day statutory period.

Second, Grandmother's argument would circumvent the applicable appellate jurisdiction statutes and render them meaningless. As noted, the August 2020 termination order did not address, incorporate, or continue the kinship care placement limitations in the 2019 temporary custody order. And the applicable statutes required Grandmother to challenge those limitations by appealing the temporary custody order within 30 days. See K.S.A. 38-2273(c) (providing that K.S.A. chapter 60, article 21 governs procedure for appeals under the Revised Code); K.S.A. 2021 Supp. 60-2103(a) (a party must appeal within 30 days of the district court entering judgment). Grandmother failed to do so. Permitting Grandmother to challenge the limitations in the 2019 temporary custody order through an appeal from the 2020 termination order would circumvent the requirements of K.S.A. 38-2273(c) and K.S.A. 2021 Supp. 60-2103(a). Thus, Grandmother cannot

23

manufacture or bootstrap appellate jurisdiction by using the August 2020 termination order as a vehicle to appeal the kinship care placement limitations in the September 2019 temporary custody order.

The panel also concluded that it lacked jurisdiction over this portion of Grandmother's appeal. We agree with that conclusion but depart from the panel's reasoning. We hold that Grandmother has raised an untimely challenge to the temporary-custody order, and her failure to timely appeal from that order deprives appellate courts of jurisdiction over these claims. In contrast, the panel held that it lacked jurisdiction because "only the parents have standing to appeal" a termination order. *In re N.E.*, 2021 WL 5144521, at *8. We are skeptical of the panel's sweeping pronouncement.

To satisfy the Kansas Constitution's case-or-controversy requirement, Grandmother needed to establish both statutory and common law standing to appeal this order. See *In re T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018). But K.S.A. 38-2273(a) expressly allows an "interested party," including a grandparent, to appeal a termination order. Thus, Grandmother seemingly had statutory standing to appeal. And, under the present showing, we are unwilling to foreclose the possibility that a grandparent could establish common-law standing to challenge orders terminating parental rights or other ancillary rulings made in such orders. See *Baker v. Hayden*, 313 Kan. 667, 674, 490 P.3d 1164 (2021) (establishing common-law standing requires showing "'a personal interest in a court's decision'" and that the person "'personally suffers some actual or threatened injury as a result of the challenged conduct'"). In any event, because we hold that Grandmother has raised an untimely challenge to the temporary-custody order, and her failure to timely appeal from that order deprives appellate courts of jurisdiction over these claims, we need not decide the standing issue here.

*C. K.S.A. 38-2273(a) Precludes Appellate Review of the District Court's December 2020 and January 2021 Post-termination Orders*

The final two orders that Grandmother has challenged are the December 2020 journal entry and the January 2021 journal entry. The December 2020 journal entry reflects the district court's post-termination permanency rulings, including its finding that DCF had failed to make reasonable efforts or progress toward adoptive placement, and its attendant orders terminating DCF custody and placing N.E. in the custody of foster parents for adoption. In the January 2021 journal entry, the district court first explained why it had taken Grandmother's custody motion under advisement after the October 2020 evidentiary hearing and through the conclusion of the post-termination permanency hearing on December 18, 2020. Then, it ruled that all matters it had taken under advisement were resolved by the custody orders in the December 2020 journal entry.

The panel concluded that our holding in *In re N.A.C.* foreclosed appellate jurisdiction over these two orders. *In re N.E.*, 2021 WL 5144521, at *7-8. In *In re N.A.C.*, we held that appellate courts lack jurisdiction to review post-termination orders in CINC proceedings because they are not an "order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights" under K.S.A. 2012 Supp. 38-2273(a). 299 Kan. 1100, Syl. ¶ 6. Acknowledging as much, Grandmother asks us to reconsider *In re N.A.C.*'s holding.

To resolve the jurisdictional question, we first examine the holding in *In re N.A.C.* and conclude that the doctrine of stare decisis warrants our continued adherence to this precedent. Then, we analyze both of the challenged orders under *In re N.A.C.*'s holding and conclude that this precedent forecloses appellate review of the December 2020 and January 2021 journal entries.

25

### 1. *Stare Decisis Analysis of* In re N.A.C.

Grandmother's appeal from these two post-termination orders requires us to address a threshold inquiry: whether the doctrine of stare decisis warrants our continued adherence to *In re N.A.C.* "The doctrine of stare decisis provides that 'points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised.'" *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 (2021) (quoting *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362-63, 361 P.3d 504 [2015]). "'"The application of stare decisis ensures stability and continuity—demonstrating a continuing legitimacy of judicial review."'" *State v. Davidson*, 314 Kan. 88, 93, 495 P.3d 9 (2021). Thus, "we do not lightly disapprove of precedent." *State v. Spencer Gifts*, 304 Kan. 755, 766, 374 P.3d 680 (2016).

> "'While "stare decisis is not an inexorable command," this court endeavors to adhere to the principle unless clearly convinced a rule of law established in its earlier cases "'"was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent."'" [Citations omitted.]'" *Clark*, 313 Kan. at 565.

In *In re N.A.C.,* we determined that the Legislature had structured CINC proceedings as a sequence of steps and that the appealable orders listed in K.S.A. 2012 Supp. 38-2273(a)—orders of temporary custody, adjudication, disposition, unfitness, and termination of parental rights—corresponded to those steps. 299 Kan. at 1115-16. As a result, we held that an order terminating parental rights is the last appealable order in a CINC proceeding under K.S.A. 38-2273(a), and orders entered post-termination are not appealable. 299 Kan. 1100, Syl. ¶ 6.

Grandmother contends that *In re N.A.C.*'s holding was erroneous. She claims that some post-termination orders (like the one that denied her custody motion) are properly classified as dispositional orders because they address custody and are entered after the

26

child has been adjudicated as a child in need of care. See 299 Kan. at 1119 (defining dispositional orders). Because K.S.A. 38-2273(a) allows an appeal from "*any . . . disposition*," Grandmother reasons *In re N.A.C.* wrongly concluded that the statute precludes appellate review of post-termination orders addressing custody. The dissent in *In re N.A.C.* raised the same point, but the majority rejected this construction of the Revised Code's jurisdiction statute. See 299 Kan. at 1123 (Johnson, J., dissenting).

We are not "clearly convinced" *In re N.A.C.*'s holding was originally erroneous. First, *In re N.A.C.*'s interpretation of the appellate jurisdiction statute is logical and better harmonizes this statute with other provisions in the Revised Code when read *in pari materia*. See *State v. Mora*, 315 Kan. 537, 543, 509 P.3d 1201 (2022) ("[S]tatutes relating to the same subject should be considered *in pari materia* to achieve consistent, harmonious, and sensible results whenever possible."). As noted, K.S.A. 38-2273(a) identifies five categories of appealable orders under the Revised Code: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." But "[n]one of the appealable orders listed in K.S.A. 2012 Supp. 38-2273(a) are defined in the Revised Code's definitional statute, K.S.A. 2012 Supp. 38-2202." *In re N.A.C.*, 299 Kan. at 1110. Even so, *In re N.A.C.* reasoned that "each [type of appealable order] is given context by its own statutory provisions that establish deadlines, notice requirements, and required underlying findings or legal conclusions. So, while the appealable orders are not explicitly defined, the governing statutes for each give description and meaning to the terms." 299 Kan. at 1110-11.

Focusing on dispositional orders specifically, *In re N.A.C.* acknowledged that "[t]here is more complexity to the statutory scheme governing dispositional orders than the other [appealable] orders." 299 Kan. at 1113. But again, the statutory scheme gives context and meaning to the phrase "order of . . . disposition" as used in K.S.A. 38-

27

2273(a). A summary of the statutory framework governing the dispositional and termination phases of a CINC proceeding helps illustrate this point.

The timing for dispositional orders is dictated by K.S.A. 38-2253(b), which states "[a]n order of disposition may be entered at the time of the adjudication if notice has been provided . . . but *shall be entered within 30 days* following adjudication, unless delayed for good cause shown." (Emphasis added.) The substance of the dispositional hearing and attendant order are addressed by K.S.A. 38-2253:

> "(a) At a dispositional hearing, the court shall receive testimony and other relevant information with regard to the safety and well being of the child and may enter orders regarding:
>
> (1) Case planning which sets forth the responsibilities and timelines necessary to achieve permanency for the child; and
> (2) custody of the child."

K.S.A. 38-2255(b) and (c) create two paths for custody during the dispositional phase—"either the court places the child in the parent's custody or it removes the child from parental custody." 299 Kan. at 1113. If the district court chooses the latter option, *In re N.A.C.* identified the various findings and orders that the district court must make under the Revised Code:

> "For example, it must find probable cause that certain conditions exist, such as 'allowing the child to remain in [the] home is contrary to the welfare of the child.' K.S.A. 2012 Supp. 38-2255(c)(1)(B). And if the court makes the required findings and removes the child from the parent's custody, it may award custody to: (1) a child's relative; (2) a person with whom the child has close emotional ties; (3) any other suitable person; (4) a shelter facility; (5) a youth residential facility; or (6) the Secretary. This custody order 'shall continue until further order of the court.' K.S.A. 2012 Supp. 38-2255(d). In addition, if the person to whom custody is awarded is not a parent, a permanency plan

28

that conforms to the requirements of K.S.A. 2012 Supp. 38-2264 (permanency hearing: purpose, procedure, time for hearing, and authorized orders) must be prepared. K.S.A. 2012 Supp. 38-2255(e).

"Once a dispositional order is entered, the court may rehear the matter on its own motion or the motion of a party or interested party. And if there is a rehearing, the court may enter any dispositional order authorized by the Revised Code, except modification of a registered child support order." 299 Kan. at 1113-14.

See K.S.A. 38-2256.

*In re N.A.C.* reasoned that the statutory requirements and timelines governing each phase of a CINC proceeding provide meaning to the types of appealable orders identified in K.S.A. 38-2273(a).

"The terms 'order of temporary custody,' 'adjudication,' and 'disposition' must be seen as terms of art, each with a particular meaning within the Revised Code that clearly establishes a sequence of court-supervised events all marching toward permanency. This is evidenced by the time limitations within the Revised Code for each phase's duration, which ensure progress toward permanency is achieved; the differences at each phase in factual findings and legal conclusions; and in the options available to the district court in each phase." 299 Kan. at 1116.

And under this sequencing, dispositional orders are limited temporally. Reading the CINC provisions together, an order of disposition is defined as those orders "concerning child custody entered after the child is adjudicated a child in need of care. But this dispositional phase ends once an order terminating parental rights is entered, precluding appellate review of any later orders because post-termination orders are not considered 'dispositional orders.' [Citations omitted.]" 299 Kan. at 1119. This is true, in part, because the termination of parental rights statute limits the actions the court can take once parental rights have been terminated—"the court can authorize an adoption, appoint

29

a permanent custodian, or order continued permanency planning." 299 Kan. at 1120; see K.S.A. 38-2269(g)(2). "Notably absent is the authority to enter a dispositional order" under K.S.A. 38-2255. 299 Kan. at 1120. "This, of course, makes sense because when parental rights have been terminated, it is necessarily true that the district court is no longer doing what the disposition phase requires:  weighing whether the parent should have custody and, if not, whether reintegration is possible. That ship has sailed." 299 Kan. at 1120-21.

*In re N.A.C.*'s construction of K.S.A. 38-2273(a) is thus "consistent with the statutes governing dispositions and termination of parental rights. It is also consistent with the Legislature's decision to limit the appealable issues under K.S.A. 2012 Supp. 38-2273(a)." 299 Kan. at 1119-20.

The dispositional rehearing statute, K.S.A. 38-2256, does not undermine *In re N.A.C.*'s holding or its supporting rationale. K.S.A. 38-2256 permits the court to "rehear the matter" after it has entered a dispositional order. The statute does not expressly limit rehearing to those motions entered before the termination of parental rights. Thus, one might argue the rehearing statute supports a broader definition of the phrase "order of disposition" in K.S.A. 38-2273(a)—one that includes post-termination orders affecting the child's custody.

But as we explained in *In re N.A.C.*, construing an "order of disposition" to be limited temporally to those disposition orders entered after adjudication but before termination of parental rights gives meaning to the rehearing statute and K.S.A. 38-2273(a):

> "But this reasoning [that the rehearing statute allows for post-termination orders
> of disposition] oversimplifies and wrongly dispenses with the prior caselaw, which does
> not necessarily deny an appeal of a dispositional order issued after a rehearing. After all,

30

the time period between a first order of disposition and a termination of parental rights may be significant, and more than one order of disposition might be required, especially if the goal is to first attempt parental reintegration. Nothing in the jurisdictional statute prevents an appeal from any dispositional orders entered after rehearing. But the cutoff under the Revised Code's structure . . . is the order terminating parental rights . . . . [Citations omitted.]" 299 Kan. at 1120.

And *In re N.A.C.*'s construction better harmonizes the rehearing statute and K.S.A. 38-2273(a) with the termination of parental rights statutes. As noted, those statutes limit the district court's authority to enter orders of disposition post-termination because at that stage of the CINC proceeding the district court is no longer considering whether the parent should have custody or whether reintegration is possible. 299 Kan. at 1120-21.

*In re N.A.C.*'s construction not only brings the various provisions of the Revised Code into harmony, but it "is also consistent with the legislature's obvious intent to limit the types of appealable issues so there is timely closure in these cases. Otherwise, it is easy to see how these cases could turn into back-and-forth campaigns of endless litigation and appeals by persons other than the child's parents." 299 Kan. at 1121. Grandmother's proposed construction fails to read the statutory provisions *in pari materia* and conflicts with the Legislature's intent to promote timely resolution of CINC proceedings. In fact, Grandmother's interpretation of a disposition order "could leave children exposed to an endless circle of appellate custody battles." 299 Kan. at 1120.

Granted, *In re N.A.C.*'s holding insulates detrimental placement decisions from appellate review. But "our district court judges who are tasked with presiding over these difficult CINC cases are well aware of the stakes." 299 Kan. at 1122. And this concern is simply part of the cost-benefit analysis the Legislature employed when it adopted the Revised Code and chose to limit the scope of appealable orders in CINC proceedings to ensure timely progression towards permanency. The separation-of-powers doctrine

prevents us from second-guessing the Legislature's judgment on this public policy matter, as another Court of Appeals panel observed:

> "We simply cannot create a new category of appeals so that appeals like this one may be heard. Nor should we. The legislature has worked hard to create a comprehensive Code for Care of Children. It has attempted to balance the protection of the rights of children, parents, and other interested parties against the need for speed sufficient to ultimately allow children to move on and live their lives. We respect the choice the legislature has made here." *In re A.F.*, 38 Kan. App. 2d 742, 746, 172 P.3d 63 (2007).

See *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 274, 202 P.3d 7 (2009) ("It is not the function of the courts to substitute their social and economic beliefs for the judgment of the legislature or to determine whether a statute is wise or necessary.").

In sum, *In re N.A.C.*'s holding is logical, and its construction of K.S.A. 38-2273(a) is preferable when reading the various provisions of the Revised Code *in pari materia*. And *In re N.A.C.*'s holding was not groundbreaking. Several panels of the Court of Appeals had adopted the same construction of K.S.A. 38-2273(a) long before *In re N.A.C.* See 299 Kan. at 1115 ("The vast majority of appeals under the Revised Code and its predecessor have been decided by our Court of Appeals with little review from this court. Over time, numerous Court of Appeals panels have developed caselaw consistently viewing both the Revised Code and its predecessor as creating a statutory framework of sequential steps or phases."). For these reasons, we are not clearly convinced that the holding in *In re N.A.C.* was originally erroneous.

Nor are we "clearly convinced" *In re N.A.C.*'s holding is no longer sound because of changing conditions. In the eight years since *In re N.A.C.*, the Legislature has expressed no disagreement, through statutory amendment, with our interpretation of K.S.A. 38-2273(a). See *State v. Quested*, 302 Kan. 262, 278, 352 P.3d 553 (2015) ("The

doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so."). Perhaps the most significant development to occur since *In re N.A.C.* is that the composition of our court has changed. But "we should be highly skeptical of reversing an earlier decision where nothing has changed except the composition of the court." *State v. Marsh*, 278 Kan. 520, 577, 102 P.3d 445 (2004) (McFarland, C.J., dissenting); see also *Davidson*, 314 Kan. at 95 (Standridge J., concurring) (A "change in the membership of this court cannot, in and of itself, justify a departure from the basic principle of stare decisis.").

We therefore reaffirm the holding in *In re N.A.C.*: an order terminating parental rights is the last appealable order under K.S.A. 38-2273(a), and post-termination orders are not appealable, even if they address custody. See 299 Kan. 1100, Syl. ¶ 6.

### 2. *Application of* In re N.A.C. *to Challenged Orders*

Having reaffirmed *In re N.A.C.*, we next apply this precedent to the December 2020 and January 2021 journal entries from which Grandmother has appealed.

As noted, the December 2020 journal entry memorialized the district court's post-termination permanency decisions. This journal entry included the district court's finding that DCF had failed to make reasonable efforts or progress toward adoptive placement and its attendant orders terminating DCF custody and placing N.E. in the custody of foster parents for adoption.

In *In re N.A.C.*, the appellant challenged nearly identical orders. We found appellate jurisdiction lacking over the district court's post-termination decisions, including:

"(1) the district court's finding that the responsible state agency failed to make reasonable efforts or progress toward adoptive placement; and (2) its attendant orders, which were contingent under the statute upon that first finding, removing the child from state agency custody and placing her directly with her foster parents with permission to adopt." 299 Kan. at 1101.

Grandmother has challenged the December 2020 journal entry, which made the same findings and entered the same attendant custody orders at issue in *In re N.A.C.* Thus, *In re N.A.C.* is apposite and controls the jurisdictional question presented here. Thus, K.S.A. 38-2273(a) does not provide appellate courts with jurisdiction to review the December 2020 journal entry.

Grandmother also appeals from the January 2021 journal entry. There, the district court found that various pandemic-related issues had required it to take Grandmother's custody motion under advisement (after the October 2020 evidentiary hearing on the motion and until all parties could be heard at the December 2020 post-termination permanency hearing). Then, the district court ruled that all matters it had taken under advisement, which necessarily included Grandmother's custody motion, were resolved by the custody orders in the December 2020 post-termination journal entry on permanency. Under *In re N.A.C.*, K.S.A. 38-2273(a) likewise forecloses appellate review of the January 2021 journal entry because this order was entered months after the district court terminated parental rights.

But we recognize that the timeline of events and procedural history here could raise more complicated questions of equity and fairness. On May 22, 2020, prior to the termination of parental rights, Grandmother moved for custody of N.E. The district court set that motion for evidentiary hearing on August 4, during the dispositional phase of N.E.'s CINC proceedings. In the meantime, on June 17, the State moved for findings of unfitness and termination of parental rights. The district court set that motion for evidentiary hearing on August 20.

Had matters progressed as scheduled, the district court would have ruled on Grandmother's custody motion during the dispositional phase before it terminated parental rights. And if the district court had ruled on the motion during the dispositional phase, we see no reason why Grandmother could not have pursued a timely appeal of the decision as a dispositional order under K.S.A. 38-2273(a).

But disruptions caused by the COVID-19 pandemic impacted the scheduling and progression of the proceedings. The district court continued the August 4 evidentiary hearing on Grandmother's custody motion because the State's attorney was in quarantine. That evidentiary hearing was reset to September 8, 2020. In the meantime, no party moved to continue the hearing on the State's motion to terminate parental rights. And the district court conducted that hearing as scheduled on August 20, where it terminated parental rights and set the matter for a permanency hearing on September 3. The district court memorialized these findings and conclusions in the August 28th journal entry, thus terminating the dispositional and termination phases of N.E.'s CINC proceedings.

After the district court entered its termination orders, Grandmother expressed concern that conducting a permanency hearing before the evidentiary hearing on her custody motion could render the latter moot. Thus, Grandmother moved to continue the September 3rd post-termination permanency hearing to September 8—the date set for the hearing on the custody motion. The district court granted Grandmother's request.

But the State moved to continue the September 8, 2020 consolidated hearings on permanency and custody because one of its key witnesses was in COVID-19 quarantine. The district court rescheduled the hearing for October 9. On that date, the district court took evidence on the custody motion. But not all interested parties were present—counsel for foster parents could not attend because of illness related to COVID-19. The district court took evidence from the available parties on the custody motion and continued the

35

rest of the consolidated hearing to November 13. It took Grandmother's custody motion under advisement until all parties could be heard at the November permanency hearing. But again, the November 13th hearing was continued because Grandmother's attorney was ill and foster parents' expert witness was unavailable. The district court conducted the consolidated hearing on December 18, where it terminated DCF custody and placed N.E. in the custody of foster parents for adoption, as memorialized in the December 2020 journal entry. And, in its January 2021 journal entry, the district court confirmed that its December post-termination permanency decisions had resolved Grandmother's custody motion.

These facts reveal that the district court's ruling on Grandmother's custody motion did not follow the same progressive sequencing of CINC phases contemplated in the Revised Code. This may prompt concerns that the district court violated Grandmother's due-process rights or otherwise erred by ruling on Grandmother's custody motion (filed before termination of parental rights) only after the dispositional and termination phases had ended and the matter had progressed to the post-termination phase.

But appellate courts cannot create equitable exceptions to statutory jurisdictional requirements. *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012). And even if the district court's sequencing of the CINC proceedings and the timing of its orders could constitute error, Grandmother did not raise those concerns in the district court or on appeal. See *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014) ("[C]onstitutional grounds for reversal cannot be raised for the first time on appeal."); see also *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) ("Issues not briefed are deemed waived or abandoned."). Thus, Grandmother waived or abandoned any claim of error based on the timing or sequencing of the CINC phases.

There is no evidence in the record to suggest that Grandmother objected to the State's request to continue the August 4, 2020 evidentiary hearing on her custody motion.

36

Nor is there any evidence that Grandmother objected to the August 20th setting for the hearing on the State's motion to terminate parental rights. Grandmother did not move to continue the August 20th termination hearing to ensure that the district court ruled on her custody motion during the dispositional phase before it terminated parental rights. In fact, Grandmother appeared in person and by counsel at the August 20th termination hearing and there is no evidence in the record that Grandmother objected to moving forward with the hearing as scheduled. Quite simply, Grandmother allowed the termination hearing to proceed on August 20 and allowed the district court to enter orders terminating parental rights on August 28 without objection.

And nothing in the record suggests that the district court scheduled or rescheduled these matters intentionally to deprive Grandmother of her right to appeal the ruling on her custody motion. To the contrary, the record confirms that the district court's schedule was impacted most significantly by complications related to the pandemic.

In short, Grandmother preserved no objection at the district court and waived any objection on appeal to the timing or progression of the CINC proceedings—specifically, the district court's decision to proceed to the post-termination phase before ruling on the custody motion filed during the dispositional phase. Thus, we reserve for another day whether a district court errs by proceeding in such a manner.

We hold that appellate courts lack jurisdiction to review the district court's December 2020 and January 2021 post-termination journal entries. Because we also hold that appellate courts lack jurisdiction to review the June 2020 placement order and the August 2020 termination order under K.S.A. 38-2273(a), we dismiss this appeal for lack of jurisdiction.

Judgment of the Court of Appeals dismissing the appeal is affirmed.

* * *

STANDRIDGE, J., dissenting: I dissent from the majority's interpretation of K.S.A. 38-2273(a), based on its continued adherence to *In re N.A.C.*, 299 Kan. 1100, 329 P.3d 458 (2014), to bar appellate review of the district court's December 2020 and January 2021 orders. I would find these orders qualify as orders of disposition that constitute appealable orders under K.S.A. 38-2273(a).

K.S.A. 38-2273(a) provides that "[a]n appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." Although the term "disposition" is not defined in the general definitional section of the Revised Kansas Code for Care of Children (Code), "dispositional orders have been interpreted to be those concerning child custody entered after the child is adjudicated a child in need of care." *In re N.A.C.*, 299 Kan. at 1119.

The majority reaffirms *In re N.A.C.*'s holding that dispositional orders are limited temporally, construing the Code's statutory requirements and timelines governing each phase of a child in need of care proceeding to mean that the dispositional phase ends once an order terminating parental rights is entered. But this reading of the Code ignores the basic rules of statutory construction. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). If we find the statutory language is plain and unambiguous, we do not speculate about the legislative intent behind that clear language and should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). The majority's holding is inconsistent with the plain and unambiguous language of K.S.A. 38-2273(a), which provides that "[a]n appeal may be

taken by any party or interested party from *any* order of . . . disposition." (Emphasis added.) If the Legislature had intended for the term "disposition" to refer solely to those orders entered before termination, it could have said as much, i.e., "any order of . . . disposition entered prior to termination." The majority reads a pre-termination requirement into the statute where there is none.

The Legislature intentionally left open the possibility for the court to enter multiple orders of disposition. K.S.A. 38-2256 authorizes the court to rehear *any* order of disposition on its own motion or the motion of any party or interested party, after which the court may enter any dispositional order authorized by the Code. Again, the Legislature, through its plain and unambiguous language, did not limit rehearing to those orders entered before the termination of parental rights.

I am also unpersuaded by the argument that the Legislature failed to provide courts with express authority to enter a post-termination dispositional order under K.S.A. 38-2255. The court's authority under the termination of parental rights statute includes the ability to authorize an adoption and appoint a permanent custodian, both of which concern the custody of a child adjudicated a child in need of care and therefore meet the definition of a dispositional order. To construe the statutory scheme otherwise results in unreasonable and arbitrary results. See *Garcia v. Ball*, 303 Kan. 560, 569, 363 P.3d 399 (2015) (courts interpret statutes to avoid absurd or unreasonable results). As the following chronology shows, the resulting inconsistency is particularly conspicuous in this case.

Grandmother filed a motion for custody of N.E. on May 20, 2020. A month later, the district court found reintegration with N.E.'s parents was not a viable permanency objective and adoption might be in N.E.'s best interests. Around this time, the district court scheduled a hearing on Grandmother's custody motion for August 4, 2020, and a hearing on the State's motion to terminate parental rights for August 20, 2020.

But on August 3, 2020, the State filed a motion to continue Grandmother's custody hearing because the State's attorney was quarantined pending the results of a COVID-19 test. The court granted the motion and reset the custody hearing for September 8, 2020. The court did not, however, move the hearing on the State's motion to terminate parental rights. After hearing the evidence on August 20, the court granted the State's motion to terminate parental rights and ordered N.E. to remain in the custody of the Department for Children and Families (DCF).

The court did not hear evidence related to Grandmother's motion for custody until October 9, 2020. And even then, the court took the matter under advisement. The court finally ruled on Grandmother's motion in an order dated January 6, 2021, denying it as moot. The ruling came almost eight months after it was filed and, ironically, on the same day the court granted foster parents' petition for adoption.

Based on this chronology, the majority holds we do not have jurisdiction to consider an appeal from the district court's decision to deny Grandmother's motion for custody because the dispositional decision was made after the court terminated parental rights. But the majority's interpretation of the statute also compels a different conclusion: *we would have had jurisdiction* to review the appeal if the State's attorney had not been exposed to COVID-19 requiring quarantine and the district court had denied Grandmother's motion at the scheduled hearing on August 4. The Legislature could not have intended the statutory scheme to lead to such an unreasonable and inconsistent result. This is especially true here, where Grandmother filed a timely motion and requested a timely hearing but was deprived of her ability to appeal simply because she had no control over the court's docket.

Finally, the majority's interpretation of the Code to limit appellate review of a dispositional order to those entered before termination does little to further the objective

40

of protecting the child's welfare and serving the best interests of the State. See K.S.A. 38-2201(b)(2) ("The code shall be liberally construed to carry out the policies of the state" which include "provid[ing] that each child who comes within the provisions of the code shall receive the care, custody, guidance control and discipline that will best serve the child's welfare and the interests of the state."). Indeed, the majority acknowledges that "*In re N.A.C.*'s holding insulates detrimental placement decisions from appellate review." *In re N.E.,* 316 Kan. __, __ P.3d __ (2022), slip op. at 31.

Considering the specific language set forth within K.S.A. 38-2273(a), the statutory scheme as a whole, and the Code's underlying purpose of protecting the child's welfare and serving the best interests of the State, I would hold a dispositional order subject to appeal under K.S.A. 38-2273(a) includes any dispositional order authorized by the Code, including post-termination orders. Here, the district court's December 2020 order removed N.E. from the legal custody of DCF and placed her in the custody of foster parents for adoption. In the January 2021 order, the court ruled that all matters taken under advisement, including Grandmother's custody motion, were resolved by the December 2020 order. Because these orders both impacted the legal custody of N.E., I would find they constitute appealable orders of disposition under K.S.A. 38-2273(a).