NOT DESIGNATED FOR PUBLICATION

No. 126,881

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF PRAIRIE VILLAGE, KANSAS, A MUNICIPAL CORPORATION,
*Appellee/Cross-appellant*,

v.

PV UNITED, INC., and REX SHARP,
*Appellants/Cross-appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held October 16, 2024. Supplemental briefing filed October 25, 2024. Opinion filed March 7, 2025. Affirmed in part and reversed in part.

*Rex A. Sharp*, of Sharp Law LLP, of Prairie Village, for appellants/cross-appellees.

*W. Joseph Hatley*, of Spencer Fane LLP, of Kansas City, Missouri, and *David E. Waters*, of the same firm, of Overland Park, for appellee/cross-appellant.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

ARNOLD-BURGER, C.J.: The ability of Americans to petition their government with grievances is a longstanding and cherished right in a democracy. It even appears in the First Amendment to the United States Constitution. ("Congress shall make no law . . . abridging the . . . right of the people to . . . petition the Government for a redress of grievances.") That right extends from the highest levels of power to the local or city level. In Kansas, like most states, the Legislature has set out various procedures to get those grievances before the electorate, depending on the desired result.

1

Here, a group of citizens in Prairie Village were dissatisfied with the size and form of the municipal government. They wanted to abolish the existing structure and set up a new structure. When the elected officials did not share their dissatisfaction, they looked to the statute for the procedure to effectuate the change they desired. They proceeded through that process, submitting two citizen petitions, one to abandon the existing mayor-council form of government (Abandon Petition) and one to adopt a mayor-council-manager form of government (Adopt Petition). They also wanted to change the method by which elected officials change the zoning laws in the city, believing that some recent changes or suggested changes were detrimental to maintaining the character of the City of Prairie Village. Finally, they sought to change the process for rezoning actions by the City (Rezone Petition).

When the petitions were presented to the City, it brought a lawsuit, called a declaratory judgment action. Such an action calls for the court to determine whether the petitions submitted met the criteria in the statutes for such petitions. The City believed they did not and that it was not required to place the items on the ballot for the voters of Prairie Village to decide. The district court held a hearing and found that, under state law, the Adopt Petition and the Rezone Petition were not proper, but the Abandon Petition was sufficient and should go before the voters. Both sides appealed the decision. The City argued that the Abandon Petition was also improper and the defendants argued that both the Adopt Petition and Rezone Petition were proper. There are several other collateral issues the parties raise, and they will all be addressed in turn. But based on our extensive review of the record, the arguments of the parties, and both the statutory law and the pertinent caselaw, we reverse the district court's decision denying attorney Rex Sharp's motion to dismiss him as a party to the action and affirm the district court's decision in all other respects.

FACTUAL AND PROCEDURAL HISTORY

On April 25, 2023, Sharp, submitted the three petitions at issue here to the Johnson County Counselor, as required by K.S.A. 25-3601(a), for approval as to the form of the question posed on the petitions to be placed on the upcoming November 2023 ballot. They were (1) the Abandon Petition; (2) the Adopt Petition; and (3) the Rezone Petition.

The Johnson County Counselor issued her advisory opinion on May 1, 2023, beginning with a general advisory:

> "Kansas law provides for the determination of the sufficiency of the substantive portions of the petition, which requires the exercise of discretionary judgment, as the responsibility of the governing body of the public entity to which the petition is addressed. Accordingly, the sufficiency of the petition and of the questions stated, and form in which the question is presented, will be determined by the City of Prairie Village."

In sum, the county counselor advised Sharp that the Abandon and Adopt Petitions did not comply with K.S.A. 25-3601 because they omitted the language, "'Shall the following be adopted?'" preceding the questions that would be submitted to voters on a potential ballot. The Rezone Petition included that language, so the counselor qualifiedly approved the form of the question on that petition with a caveat that the petition must also "include the entire ordinance or the ordinance title 'generally descriptive of the contents,' as required by K.S.A. 12-3013(b), and you must be sure that the ordinance you propose is in proper form, pursuant to Kansas law."

After the petitions were circulated for signatures without modification, Sharp filed the signed petitions with the appropriate government officials for certification on August 1, 2023. Sharp submitted the Abandon and Adopt Petitions directly to the election

3

commissioner for signature verification and requested him to "advise if the [questions] will be placed on the ballot for November 7, 2023." Sharp submitted the Rezone Petition to the city clerk, who promptly forwarded them to the election commissioner for signature verification. On August 14, 2023, the election commissioner certified to the city clerk that each petition had the required number of signatures, but advised for each petition that "[w]e will need the City's written confirmation of: 1) Whether the petition is valid; 2) if valid and an election is called, the question for the ballot; and 3) the date requested for the election."

On August 17, 2023, the City filed a declaratory judgment action in the district court, seeking a declaration that each of the petitions was invalid and therefore the City was not required to place them on the ballot. The City argued each of the petitions did not comply with procedural requirements for petitions and proposed substantive changes that were contrary to Kansas law. The City named two defendants: PV United Inc. (PV United) and Sharp, both in their individual capacities and as representatives of an unincorporated association known as "'Stop PV Rezoning,'" which the City alleged was an "unincorporated association of individuals who claim to be residents of the City." The City further alleged that Sharp was a proper defendant because he "organized, circulated and submitted the petitions at issue in this case on behalf of PV United and 'Stop PV Rezoning'" without "claim[ing] to be doing so in his capacity as an attorney, but rather as a resident of Prairie Village."

On August 28, 2023, PV United and Sharp filed a joint answer and moved to dismiss Sharp as a defendant because he did not circulate the petitions as alleged by the City and because he is PV United's attorney. PV United and Sharp also urged the court to dismiss both "unincorporated association 'representative' defendants," arguing there was factually no unincorporated association to represent. Lastly, PV United stated that it would remain in the case to "oppose the City's Petition for Declaratory Judgment so that the issue can be joined and resolved in time [before the November 2023 election]."

4

The district court heard the parties' arguments on the Abandon and Adopt Petitions at a hearing on August 30, 2023, and their arguments on the Rezone Petition at a hearing on August 31, 2023. The hearing was apparently well attended and the court admonished those in attendance that they were not to record anything. On the second day of the hearing, the judge was required to issue another admonishment after a photograph of the hearing was posted on the "Stop PV Rezoning" Facebook group.

The morning of September 6, 2023, the district court held a hearing to announce its ruling. The court began by explaining that it would render an oral decision, followed by a short written order to meet the 20-day statutory deadline for the court to render a decision in K.S.A. 25-3601(e) and because "the Election Office needs to know something by today so that they know what can and cannot go on the ballot." The court added that it was working on "a pretty detailed and extensive order that . . . I am going to amend later on that will fill in all of the details and reasons that support the decision that I made." The detailed ruling would be "filed later this week."

The district court first addressed the Rezone Petition, finding that the form of the question posed on the petition substantially complied with the relevant law but that it was not eligible to be placed on the ballot because it proposed an administrative ordinance based on *McAlister v. City of Fairway*, 289 Kan. 391, 212 P.3d 184 (2009). Second, the court found that the Abandon Petition "does not substantially comply with the statute in that it fails to state the term limitations for the offices which it seeks to abandon and that is more than a technical issue. That is a substantial noncompliance with the statute." Third, the court found the Adopt Petition "does substantially comply with the statute" and there were "no issues that would prohibit it from being placed on the ballot."

The City's attorney requested a "[p]oint of clarification," to inquire if the district court had "confused" the Abandon and Adopt Petitions. The court apologized and corrected the record. It should be noted that the descriptions of the petitions that she

5

noted were accurate. So it was clearly just a slip of the tongue, with her intention being clear.

Later that day—around 4 p.m.—the district court entered a written memorandum decision, reiterating the order was "a condensed Memorandum Decision to comply with K.S.A 25-3601(e) and the election office deadlines. A detailed decision will be rendered within 7 days." Unfortunately, the court's written decision again confused the Abandon Petition and the Adopt Petition, by title only. Again, the judge's description of what the petition included was correct, they were just improperly named.

Around 11 p.m. that same evening, the City moved to amend or correct the district court's memorandum decision because it did not reflect the court's final oral ruling. The City also pointed out that the statutes cited in the section devoted to the Abandon Petition were inapplicable. See K.S.A. 12-1039(b) (governing adoption of new form of government); K.S.A. 12-1041 (governing abandonment of commission-manager, mayor-council-manager, or council-manager forms of government). The next morning, the City also filed a conditional motion to certify the memorandum decision for appeal and for a stay of the order pending appeal.

PV United and Sharp promptly responded with their own written filings, first opposing amendment or correction of the memorandum decision, and asserting the court's written ruling showed the judge "reflected on her decision" and "returned to her original, initial ruling." They also asserted at the end of this filing that "Defendants' motion to dismiss should be ruled upon since it has remained unopposed." PV United also opposed certification for the purpose of appeal and a stay of the court's order, asserting either side could now appeal because the court's order was a final judgment.

The district court promptly took up these motions at a Zoom hearing on September 7, 2023. After hearing the parties' positions on whether to correct or amend the

6

memorandum decision, the court asked the City how its motion to amend impacted the 20-day deadline "if the Court were to make any changes after the written decision from yesterday?" The City responded that "the statutory directive to rule within 20 days only goes to the form of the question in the petition" and that "[t]he Court is under no such deadline to rule with regard to the substantive validity of the petitions." Sharp disagreed that the issues raised by the City were not considered part of the "form of the question," and questioned the court's authority to amend its decision beyond the 20-day deadline. The court explained that it would consider the parties' motions and arguments, reiterating that it intended to issue a final journal entry but would refrain from issuing any other oral rulings to avoid further confusion.

On September 15, 2023, the district court issued an amended memorandum decision and decided to "reinstate[] its oral decision rendering the Rezoning Petition and Adoption Petition not eligible to be submitted to a vote before the electors of Prairie Village, Kansas and the Abandonment Petition may be submitted." Beginning with the Rezone Petition, the court explained that K.S.A. 12-3013(e)(1) excludes administrative ordinances from the initiative petition process, which Kansas courts have assessed using the four guidelines outlined in *McAlister*. Although the court found the second guideline was "not helpful to the analysis," the court determined the other three factors showed the ordinance proposed in the Rezone Petition was "overwhelmingly administrative in nature." A more detailed recitation of the court's analysis on each of the guidelines will be provided later in this opinion.

As for the Adopt Petition, the district court found it "complied with the basics of K.S.A. 25-3601 and K.S.A. 12-184, however its failure to fully comply with K.S.A. 12-1039(b) and (c) is what prevents the Petition from being put forth before the voters." In short, the court concluded the Adopt Petition failed to comply with K.S.A. 12-1039(b) because it did not establish the term of office for the mayor other than stating that the current mayor would serve a reduced two-year term. The court also found the Adopt

7

Petition improperly "seeks to adopt a new mayor-council-manager government and a new city council at the same time," which the court concluded was "in direct conflict of [K.S.A. 12-1039(b)]."

Finally, as for the Abandon Petition, the district court found it was legally sufficient to be submitted to the ballot. The court explained the Abandon Petition complied with K.S.A. 12-1041 "by replacing the words 'adoption' or 'adopt' with the words 'abandonment' and 'abandon' in K.S.A. 12-1039." The court also found the petition had the required number of qualified signatures and there were no technical deficiencies to "prevent the question from being put forth on the ballot as it substantially complies to statute and is consistent with *City of Wichita v. Peterjohn*, 62 Kan. App. 2d 750[, 522 P.3d 385] (2022)."

PV United filed a notice of appeal.

After this court docketed the appeal, the district court filed an entry of final judgment by agreement of the parties on October 5, 2023. The City then filed a notice of cross-appeal.

After briefing, but before oral argument, this court requested supplemental briefing on an issue brought to its attention in appellants' brief. Appellants argued that the district court had failed to rule on its motion to dismiss. Orders which do not dispose of all parties or of all claims are interlocutory and not subject to review. *Pioneer Operations, Co., Inc. v. Brandeberry*, 14 Kan. App. 2d 289, 291, 789 P.2d 1182 (1990). Oral argument was ordered to proceed as scheduled, but the parties were to present supplemental briefing related to whether the district court's decision was final and appealable. The parties submitted their supplemental briefs in compliance with the deadline of October 25, 2024.

8

ANALYSIS

While Kansas law places the power to adopt and amend legislative ordinances with a city's governing body, individual citizens are also able to directly influence the legislative process with the initiative petition procedures outlined in several statutes. This appeal concerns three such petitions which sought voter approval by the residents of Prairie Village. The parties argue both procedural and substantive aspects of the statutes and judicial procedure in this case. We will begin with the procedural issues.

I.     PROCEDURAL ISSUES

In response to our request for supplemental briefing, all parties argued that the district court's decision was a final appealable decision, although the focus changed slightly. In supplemental briefing, the appellants abandon any argument that the court *failed* to rule on its motion, instead arguing that the district court implicitly ruled on its motion by entering judgment. And the appellee agrees. The appellants then proceed with the argument that the district court erred in denying the motion because neither Sharp nor PV United were proper parties. Since both parties agree that the district court made a decision to deny the motion to dismiss, albeit implicit, we retain jurisdiction and address that issue first.

Resolving both procedural questions requires statutory interpretation, which this court conducts using an unlimited standard of review. *Roe v. Phillips County Hospital*, 317 Kan. 1, 5, 522 P.3d 277 (2023).

A. *The district court did not err in failing to dismiss PV United in its representative capacity, but did err in failing to dismiss Rex Sharp from the case.*

The first statute we review is K.S.A. 25-3601. It allows "[a]ny person" to challenge the "validity of the form of a question" on an initiative petition by filing an action "in the district court within 20 days after such petition has been filed with the county election officer." K.S.A. 25-3601(b), (e). Although this statute does not restrict who can sue or be sued in an action challenging the validity of a petition—or even precisely how a challenge should be filed—we turn to the declaratory judgment statute for guidance since that was the method chosen by the City here.

"When declaratory relief is sought, all persons who have or claim any interest which would be affected by the declaration shall be joined as parties who have or claim any interest which would be affected by the declaration, and no declaration shall be binding against persons not so joined as parties to the proceeding." K.S.A. 2024 Supp. 60-1712. The statute further defines "'person'" to mean "any person, partnership, limited partnership, joint venture, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever." K.S.A. 60-1714.

So, the City has standing to seek a declaratory judgment on the validity of the initiative petitions because they are a municipal corporation with a direct interest that would be affected by the declaration sought. The three initiative petitions raised questions that would be usurping the governing body's legislative and administrative authority, so the City has a right to seek a judicial declaration clarifying its duty toward the initiative petitions.

The next question is whether Sharp and PV United were proper parties.

10

### i. PV UNITED IS A PROPER DEFENDANT IN BOTH ITS CORPORATE CAPACITY AND ITS REPRESENTATIVE CAPACITY

There is no dispute PV United Inc. is a corporate entity. The definition of "person" in the declaratory judgment statute also includes any corporation. K.S.A. 60-1714. PV United Inc. was sued in its corporate capacity as well as a representative of itself and Stop PV Rezoning. Its stated purpose is to "'oppose a rezoning of RI to include multifamily housing in Prairie Village, KS.'" To the extent it is sued in its own corporate capacity and as representative of itself, it admitted throughout the proceedings in district court that it was a proper party, including in its motion to dismiss and its brief on appeal. In fact, PV United argues that it is the only proper party to the case and only in its individual capacity. Although PV United suggests to the contrary at one point in its brief, alleging it took this position "because time was of the essence," it subsequently doubles down on its position that PV United "is the only viable defendant." "A party is not allowed to raise an issue on appeal not presented previously to the district court or inconsistent with the position taken before the district court." *Mynatt v. Collis*, 274 Kan. 850, 869, 57 P.3d 513 (2002).

We agree it is a proper party despite its stipulation. With Sharp acting as its attorney, it was the petition filer, which is sufficient, as is set out in more detail below. So it is undisputed that the City has named at least one proper party in its declaratory judgment action.

PV United's objection is to also being named as a representative of Stop PV Rezoning, which it claims is at most, an unincorporated association—which it contends has no capacity to sue or be sued except in the limited context of a class action. See K.S.A. 2024 Supp. 60-223b (allowing members of an unincorporated association to be named as "representative parties" but "only if it appears that those parties will fairly and adequately protect the interests of the association and its members"); *Prime v. Beta*

11

*Gamma Chapter of Pi Kappa Alpha*, 273 Kan. 828, 831, 47 P.3d 402 (2002) ("The rule in Kansas is that an unincorporated association can neither sue nor be sued."). In the alternative, it argues that Stop PV Rezoning is a nonexistent entity.

First, as to its claim that an unincorporated association cannot be sued, the claim is inaccurate as it relates to a declaratory judgment action. In an action for a declaratory judgement, an unincorporated association is included in the definition of a person who must be joined if it has a claim or interest which would be affected by the declaration. K.S.A. 2024 Supp. 60-1712; K.S.A. 60-1714. So there would be no procedural limitations that prevented the City from naming PV United as a representative defendant of an unincorporated association.

The question is whether it is an entity whose interests are aligned and therefore is subject to compulsory joinder under K.S.A. 2024 Supp. 60-1712. We believe that the evidence supports that it is and that it was prudent for the City to add it to the action, either separately or as aligned with the interests of PV United. This became apparent when it was shown to have a Facebook page upon which it posted pictures taken during the first hearing. The interests were clearly aligned.

ii.     SHARP IS NOT A PROPER DEFENDANT

As stated, according to PV United—in its individual capacity—it is the only "viable" defendant in this case because Sharp was not a petition circulator. We will first examine whether he should be dismissed because he was not a petition circulator.

As support for their claim, PV United points to *City of Prairie Village v. Morrison*, No. 104,918, 2011 WL 6310196, at *1 (Kan. App. 2011) (unpublished opinion). In that case, the panel found that the statutory provisions requiring the circulator of a petition to verify they personally witnessed the signing of the petition by

12

each elector "support[s] a conclusion that it is the circulator of a petition that is responsible not only for the form of the question but stands in a representative capacity for the electors that signed the petition." 2011 WL 6310196, at *4. This was in response to Morrison's argument that every single elector who signed a petition must be named.

*Morrison* is not binding on this court because it is an unpublished decision, but it also does not hold that a petition circulator is the *only* possible defendant who can represent the interests of the signed electors to a petition. Instead, the Morrison panel recognized merely that a petition circulator *can* stand in a representative capacity because their role in verifying they personally witnessed the signatures on the petition makes them responsible for the form of the question on the petition. Contrary to PV United's position, the person who files an initiative petition with the appropriate government authorities under the petition process outlined in Kansas law takes on a similar role.

None of the statutes governing the submission of the three initiative petitions at issue here state that the petition circulator must also be the person who submits or files it with the appropriate government official. For instance, the statute governing adoption or abandonment of any form of city government provides that "[a]ny petition requesting the submission of a question hereunder shall be filed with the county election officer of the county in which the city is located." K.S.A. 12-184(c). Likewise, the statute governing petitions for proposed ordinances provides the "ordinance and petition shall be filed with the city clerk." K.S.A. 12-3013(a). And K.S.A. 25-3601(a), which generally governs the process for certifying the validity of any petitions, states a copy of the petition "shall be submitted" to either the county attorney, district attorney, or county counselor, who must then furnish an advisory opinion as to the legality of the form of the question contained therein.

The common thread across these provisions is the use of passive voice without specifying who is tasked with submitting or filing the petition, which effectively means it

13

can be done by any person. Because none of these statutes specify the petition circulator must also be the person who submits or files the petition, it stands to reason that a petition filer takes on a similar role as a petition circulator. In other words, a person who submits or petitions also has standing to represent the interests of the electors who signed the petition in a case seeking a declaration on the validity of the form of the question on the petition.

So the argument that Sharp is not a proper party because he was not a petition circulator fails. He was a petition filer. With that clarification in mind, we can turn to the appellants' argument that Sharp is not a proper defendant because he is PV United's legal counsel.

There is no doubt that given Sharp's personal involvement in this issue as a resident of Prairie Village and having a spouse who was running in the primary for city council, the lines may have at first appeared to be blurred. But the City understood Sharp was a lawyer. In fact, he had appeared in court before challenging the actions of the City. See *State v. Morrison*, 302 Kan. 804, 359 P.3d 60 (2015). Everything he submitted to government officials leading up to this case was on his law firm letterhead or, as to emails, with his law firm email address. Responses were addressed to him and sent to his law office, and he was copied on correspondence from county officials as "Rex Sharp, legal counsel for petitioners." The City Attorney was also copied on the same correspondence. The City makes no allegation that he was one of the electors that signed any of the petitions. Even if Sharp drafted the petitions and actually filed the petitions, this would still be consistent with him being the attorney for PV United, making it the actual filer.

We find it is disingenuous for the City to argue that, at the time it filed this action, there was nothing to indicate Sharp was acting as an attorney in the case and that he somehow violated his ethical duties. There is absolutely nothing to support the City's

14

claim that it was entitled to "assume that Mr. Sharp was submitting the petition as an individual resident of the City, and he was therefore a proper defendant." In fact, as noted, all the documentary evidence is to the contrary. The City appears to understand the folly of its argument when it suggests in its briefing that it is either abandoning the claim or no longer contesting Sharp's inclusion as a defendant. The City argues on appeal that "[t]his is largely an academic dispute though, because . . . PV United, Inc. agreed that it was a proper party defendant, so there was no procedural impediment to the District Court's ruling."

It is and always has been crystal clear that Sharp is and was always the attorney representing PV United. He was improperly named as a defendant in this case, although we are in no position to comment on the motives for the City's action. Accordingly, we reverse the district court's decision, explicit or implicit, denying Sharp's motion to dismiss him as a party in the litigation.

B. *Although the requirement that a decision be filed within 20 days is directory, not mandatory, and of questionable constitutionality, the court met the 20-day deadline.*

PV United argues the district court failed to rule within 20 days as required by K.S.A. 25-3601(e), thus depriving the citizens of Prairie Village of their right to vote on the initiatives proposed in the petitions. In their view, the district court's noncompliance with the statute should have resulted in the petitions being deemed valid and thus eligible for submission to the ballot. Their arguments are far from persuasive and border on frivolous.

i.    THE 20-DAY DEADLINE WAS MET

When a party files an action challenging the form of a question in a petition, they are required under statute to file it within 20 days after the petition is filed with the

15

election commissioner. K.S.A. 25-3601(e). By the clear and unambiguous language of the statute, the court is required to render a decision only on the form of the question within 20 days after such petition has been filed. K.S.A. 25-3601(e) ("The court shall render an opinion in any action filed to challenge the validity of the form of a question in a petition within 20 days after the date such action is filed with the court."). As it relates to this case, if the petition states the title, number, and exact language of the ordinance and the title of the petition states: "'Shall the following ordinance, or resolution, become effective?'" the form of the question is presumed to be valid. K.S.A. 25-3601(c). Of course, that is just a presumption. There may be other language that would also be valid, and we will address that later in this opinion. The person challenging the validity of the form of the question has the burden of proving to the district court that it is invalid. K.S.A. 25-3601(b).

The petition in the case was filed on August 17, 2023. Under the statute, a decision on the form of the question was due by September 6, 2023, or 20 days later.

PV United and Sharp filed a motion to dismiss and their answer on August 28, 2023. Although the statute provides 20 days from the date of the filing of the petition for the court to render its decision, nothing shortens the amount of time that named parties have to answer the petition—which is 21 days. K.S.A. 60-212. So PV United and Sharp argue that the court was basically left with nine days to hold a hearing and enter a decision. And it further argues that this is not a "narrow issue, it includes everything that will be placed on the ballot for the people to vote on." And they take it one step further to argue that if the court fails to make a decision in that time frame, the petition must be declared valid and placed on the ballot.

First, miraculously the district court entered a decision on the form of the question *and* the substantive matters within 20 days. It is disingenuous of the appellants to argue otherwise.

16

The district court held two days of hearings in this case on August 30 and August 31. With the intervening Labor Day holiday, that gave the court just three business days to enter its decision. The judge was aware of the 20-day deadline. She set a court date on the 20th day to announce her decision. On that day she orally announced her decision, indicating that a written decision would follow. She held that the form of the question on the Rezone Petition was compliant with the statute, but it had substantive infirmities that prevented it from being on the ballot. She explained what those were. She found the form of the question noncompliant on what she termed the Abandon Petition although she referred to the problem as not designating terms of office. The terms of office were only identified in the Adopt Petition. Similarly, she found that the form of the question on the Adopt Petition was sufficient and there was nothing substantive to keep it off the ballot.

The judge's error was immediately apparent, and when the City pointed it out, she quickly corrected it, announcing it was the form of question on the Adopt Petition that was inadequate, and the form of the question on the Abandon Petition was fully compliant. She issued her written order later that day. Unfortunately, she again confused—in the same way—the Adopt Petition with the Abandon Petition.

At 11 p.m. that evening the City pointed out the decision did not reflect the correction made at the hearing earlier that day and filed a motion to amend or correct it. The judge took the matter up the very next day. She indicated that she would issue a more detailed decision in seven days, but was not going to make any more oral findings in case she would misspeak, and she just wanted to "get this right."

As promised, on September 15, the judge entered an in-depth, 11-page opinion, finding the same way she ruled from the bench, after correcting herself, on September 6. The form of the question on the Abandon Petition was compliant and that matter could be placed on the ballot. The form of the question on the Adopt Petition was not compliant and would not be placed on the ballot. And finally, the form of the question on the

17

Rezone Petition was compliant, but there were substantive reasons to keep it off the ballot.

It is well settled that a court may correct "a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order or other part of the record. The court may do so on motion, or on its own, with or without notice" as long as it is done before an appeal is docketed. K.S.A. 2024 Supp. 60-260(a); *Lee v. Brown*, 210 Kan. 168, 171, 499 P.2d 1076 (1972) (Such "errors in the journal entry do not render a judgment void. They may be corrected by the court at any time on its own initiative."). And important here, such a correction does not affect the judgment's finality or suspend its operation. K.S.A. 2024 Supp. 60-260(c).

Because, under K.S.A. 2024 Supp. 60-258, a judgment is effective when the journal entry of judgment is filed, the City filed a motion to amend the journal entry under K.S.A. 2024 Supp. 60-259(f) on September 6. See *Ross-Williams on behalf of Sprint Nextel Corporation v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018) ("The purpose of a motion to alter or amend under K.S.A. 2017 Supp. 60-259[f] is to allow a district court to correct a prior error."). By granting the City's motion, the district court agreed that it had erred in its September 6 written journal entry by deviating from the oral ruling given at the end of the hearing earlier that day and reinstated that ruling. PV United does not explain in any of its appellate briefing why it was improper for the district court to reconsider its September 6 decision under K.S.A. 2024 Supp. 60-259(f) or provide any relevant contrary authority. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (issues not briefed are waived or abandoned); *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failing to support a point with pertinent authority or show why it is sound despite lack of supporting authority is like failing to brief an issue).

18

In conclusion, any suggestion that the court's order was not timely lacks merit. We are, frankly, amazed that the district judge was able to render a decision and outline the reasons for that decision in the very short time the statute required.

        ii.        FAILURE TO RULE WITHIN 20 DAYS DOES NOT REQUIRE THAT THE COURT PLACE THE PETITIONS ON THE BALLOT

Even if we were to agree with PV United that the judge's decision was untimely, the suggestion that a court failing to rule within 20 days creates a rebuttable presumption of validity that automatically requires a question proposed in a petition to be submitted to a ballot is unsupported by the statute. K.S.A. 25-3601(a) and (c) do create rebuttable presumptions of validity, but the statute still allows any person to file an action in the district court challenging the validity of the form of the question in a petition within 20 days of the petition being filed with the county election officer. K.S.A. 25-3601(e). In other words, these presumptions alone do not indicate that the presumption becomes irrebuttable upon the lapse of time.

Although, statutory deadlines for the entry of either administrative or judicial decisions are historically not uncommon in Kansas statutes, when the consequences for noncompliance are not listed in the statute, our courts have found such deadlines to be directory rather than mandatory. See *In re L.C.W.*, 42 Kan. App. 2d 293, 296, 211 P.3d 829 (2009) ("shall" is directory where no provision for penalty or negative consequence for noncompliance is provided in statute). Such is the case here. Failure to comply with the deadline has no consequences under the statute.

And, if the purpose of the statute is to somehow expedite the process of getting a question on the ballot, the statute does not contain any corresponding language to prevent timely motions to reconsider the court's decision or appeals of the court's decision—both of which would result in a decision significantly exceeding 20 days, easily defeating any

19

such purpose. Procedural rules are adopted to promote not only the expeditious resolution of disputes, but a just resolution. See K.S.A. 2024 Supp. 60-102 ("The provisions of this act shall be liberally construed, administered and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding."). Black's Law Dictionary 1030 (12th ed. 2024) defines "just" as "[l]egally right." Coincidentally, this is the same language the trial court judge in this case used in describing her actions, she just wanted to "get this right."

So even if we were to find that her decision was untimely under the statue, which it was not, PV United is not entitled to the remedy it seeks.

### iii. THE CONSTITUTIONALITY OF LEGISLATIVELY IMPOSED JUDICIAL DEADLINES IS SUSPECT

Finally, we would be remiss if we did not note our Supreme Court decision in *State v. Buser*, 302 Kan. 1, 8-9, 2015 WL 4646663 (2015), in which it found that the mandatory judicial decision deadline in K.S.A. 2014 Supp. 20-3301(c) was unconstitutional—a violation of the separation of powers.

One legal commentator has described the heart of the problem when a court has been required to make the best decision it could within a legislatively allotted time: "Under the separation of powers principles . . . , such a decision should be reversed, because the court has permitted the time limit to interfere with its [decision making] processes in such a way as to increase the risk of an arbitrary decision." Ryan, *Rush to Judgment: A Constitutional Analysis of Time Limits on Judicial Decisions*, 77 B.U. L. Rev. 761, 806 (Oct. 1997).

Overall, "[w]hen one of the other branches interferes with the processes through which the judiciary reaches its judgments, the legitimacy of those judgments suffers.'" 77 B.U. L. Rev. at 798.

II.    SUBSTANTIVE ISSUES

A panel of this court succinctly stated the purpose and importance of initiative petitions, like the ones at issue here, in *City of Wichita v. Peterjohn*, 62 Kan. App. 2d 750, 754-55, 522 P.3d 385 (2022):

> "Given the power and lasting effect of an initiative petition—compelling the adoption of a policy by some percentage of previous voters, but potentially less than the voting majority who elected the city council members—Kansas law imposes various procedural safeguards to ensure 'the validity of the proponents' support.' For example, the initiative petition must be accompanied by the specific language of the proposed ordinance so those signing the petition 'have the opportunity to become fully aware of the exact, unalterable ordinance being proposed to become the law of their city.' And like other petitions seeking elections, an initiative petition must 'pertain[ ] to a single issue or proposition.' Petitions that fail to comply with these requirements are 'null and void' and do not trigger any further action by the city council. [Citations omitted.]"

PV United is seeking a voter referendum to abandon the current Prairie Village form of government, adopt a new form of government in its place, and—unrelated to the form of government—pass a zoning ordinance limiting the governing body's ability to modify the zoning code. The City believes each petition is noncompliant and is not required to be placed on a future ballot. We will address each petition in turn, including any related issue in the City's cross-appeal. We will start with the Rezone Petition, then go to the Abandon Petition, and finally the Adopt Petition.

21

Resolving the merits of the declaratory judgment action requires interpretation of statutes and a written instrument (the petitions), both of which are legal questions over which this court exercises unlimited review. *Roe*, 317 Kan. at 5; *State ex rel., Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). In addition, unlimited review is appropriate whenever, as here, the facts necessary to a decision are not in dispute. *McAlister v. City of Fairway*, 289 Kan. 391, 399, 212 P.3d 184 (2009). Finally, we are not required to give any deference to the district court's decision.

A.      *The Rezone Petition*

i.      BACKGROUND

It is helpful to understand the language of the proposed ordinance by considering the reason the ordinance was proposed in the first place. In other words, it is important to put this case in context, by examining the record to determine the "wrong" perceived by the 3,213 residents who signed the Rezone Petition. K.S.A. 12-3013.

In January 2021, the city council adopted a Comprehensive Plan (Plan). It was properly brought forward for a vote from the city planning commission, replacing the 2007 plan. Such plans are authorized under state statute and "constitute the basis or guide for public action to insure a coordinated and harmonious development or redevelopment which will best promote the health, safety, morals, order, convenience, prosperity and general welfare as well as wise and efficient expenditure of public funds." K.S.A. 12-747(c).

The Plan reveals that the planning process for its adoption began in 2019 and was arrived at through feedback from residents, property owners, business owners, and city leaders. Although PV United disputes that the process had "legitimate" citizen input, it made no argument regarding the validity of the Plan to the district court in writing or as

22

part of either hearing. Issues not raised before the district court cannot be raised on appeal. See *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022).

The Plan listed, as part of its vision, creating strong neighborhoods by "[diversifying] the size, type, and price point of the housing portfolio in Prairie Village." It identified a demand for alternative and lower cost housing. One such alternative suggested to meet this demand was "Accessory Dwelling Units" or ADUs. These were further defined as "'granny flats', 'mother-in-law suites', etc." The Plan provided a detailed discussion of the benefits and draw backs of such units and suggested that implementation required a "nuanced consideration to preserve the unique physical characteristics of Prairie Village neighborhoods." The Plan recommended that the City develop a Comprehensive Housing Strategy and encouraged City staff to explore the "[p]rovision of accessory dwelling units as a strategy for adding lower cost housing stock and potentially increasing the financial feasibility of housing preservation."

PV United claims in its brief that following the adoption of the Plan, the mayor appointed an ad hoc housing committee which recommended second dwellings be allowed in R-1 Single Family Residential Zones with citywide implementation for June 2023. It further asserts that the City did not consider this a rezoning. Therefore, presumably, it would need to define it specifically as a rezoning to prevent it from being allowed. However, PV United fails to cite to the record to support this statement and many other statements in its brief related to the process leading up to the petitions.

PV United seems to suggest a nefarious motive to the City's position that the plan for second dwellings in R-1 districts would not constitute a rezoning. In its brief it notes that after failing to ask for a legal opinion, the City Council "instead, claim[ed] that its proposed actions did not constitute rezoning." But such an interpretation is consistent with the general understanding of approved uses in zoning districts. If the City allowed these types of accessory dwelling units in R-1 districts, placing one there may require

23

building permits or perhaps special use permits based on the regulation adopted, but it would not be a rezoning. It would be a permitted use in the existing zoning district. A review of the Prairie Village Municipal Code reveals that some accessory buildings are now and have been allowed since at least 2018 as permitted uses in R-1 Single Family Residential Districts P.V.M.C. § 19.06.020. Even accessory living quarters have been allowed, with some restrictions. P.V.M.C. § 19.34.045.

This background, from PV United's perspective, was also outlined by counsel for PV United in oral argument before this court.

> "What's going on here is a the city council had an idea that they wanted to destroy R-1, which is single family residential zoning which is 90% of the entire city and they wanted to destroy that by allowing everybody to put a rental what they call an accessory dwelling unit in the backyard of their house and they could do that without any rezoning, without any notice to neighbors, without any opportunity to be heard, and remarkably without even the consent of the owner of the properties saying 'that's what I want.' And so that was the idea, they were just trying to run roughshod over the citizens and the citizens said stop." Oral Argument, archived, October 16, 2024 Docket (afternoon).

A review of the record does not indicate whether the recommendation was ever codified, although the City indicates, also with no cite to the record, that the Rezone Petition was an attempt to preempt any action by the City Council to implement the suggestion.

ii. THE ORDINANCE PROPOSED

The Rezone Petition sought voter approval of "AN ORDINANCE REGARDING LIMITING REZONING THAT WOULD ALLOW ACCESSORY DWELLING UNITS OR OTHER DWELLINGS FOR MORE THAN ONE FAMILY TO RESIDE ON A LOT

IN A SINGLE FAMILY RESIDENTIAL ZONING DISTRICT" that included the following language:

"Section 1: The Code of the City of Prairie Village, Kansas shall have added Section 19.02.422 entitled 'Rezoning' stating: *Rezoning* means changing a lot from a more restrictive zone to a less restrictive zone, such as permitting two or more families living or dwelling on a lot in a currently single-family residential zone (R-1), or permitting three of [*sic*] more families living or dwelling on a lot in a currently two-family residential zone (R-2).

"Section 2: The Code of the City of Prairie Village, Kansas shall have added Section 19.52.006 entitled 'Rezoning By Governing Body', stating:

a.  The governing body and/or the planning commission can initiate rezoning in an R-1 zone district only one lot at a time and only with the written consent of all owner(s) of the lot.

 b.  Rezoning initiated by the governing body and/or the planning commission for each lot must comply with all notice, opportunity to be heard, and protest rights of surrounding neighbors as set forth in Sections 19.52.015 through 19.52.045.

c.  Rezoning initiated by the governing body and/or the planning commission shall post a rezoning sign on each lot to be rezoned in the same manner as required [*sic*] Section 19.28.025 substituting 'rezoning application' for 'special use permit' on the sign.

d.  Under rezoning initiated by the governing body and/or the planning commission, the planning commission and the governing body shall make findings of fact by clear and convincing evidence of the same factors set forth in Section 19.52.030 as well as for the factors in Section 19.28.035 except that each of the factors shall be addressed in writing to justify rezoning."

### iii. DETERMINING WHETHER THE PROPOSED ORDINANCE IS ADMINISTRATIVE AND PROHIBITED OR LEGISLATIVE AND ALLOWED

With that background, we turn to the nature of the Rezone Petition. Whether the Rezone Petition met the procedural requirements of K.S.A. 25-3601 et seq. is not in

25

dispute. The district court found the Rezone Petition invalid because of its subject-matter, specifically because K.S.A. 12-3013(e)(1) does not allow initiative petitions to propose adopting "[a]dministrative ordinances." PV United challenges that ruling.

The Kansas Supreme Court has interpreted this legislative/administrative limitation to mean that an ordinance adopted through the initiative petition process must be "'quite clearly and fully legislative and not principally executive or administrative.'" *McAlister*, 289 Kan. at 402. But this does not mean the proposed ordinance must be solely or purely legislative. Instead, a court must determine under the facts of each case whether the essential character of a proposed ordinance is legislative or administrative using the following guidelines:

"1.  An ordinance that makes new law is legislative; while an ordinance that executes an existing law is administrative. Permanency and generality are key features of a legislative ordinance.

"2.  Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal with a small segment of an overall policy question generally are administrative.

"3.  Decisions which require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of policy.

. . . .

"[4.]    '[I]f the subject is one of statewide concern in which the legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an 'administrative' characterization, [and] hence is outside the scope of the initiative and referendum.' [Citations omitted.]" 289 Kan. at 403-04.

No one guideline necessarily controls over the others, but the particular facts of a case can result in one guideline weighing so heavily toward a final decision that a

26

proposed ordinance is administrative in nature. Each guideline should be considered before the court reaches a final decision. 289 Kan. at 405. Again, because the facts are undisputed, the parties agree that this court's review is unlimited. 289 Kan. at 399. So although PV United points to what it believes are errors in the district court's reasoning, we are not bound by that reasoning, nor do we have a duty to address it at all.

### iv.    WE REVIEW AND APPLY THE MCALISTER FACTORS

We begin by analyzing the proposed rezoning ordinance under *McAlister* to determine whether it is administrative and prohibited or legislative and allowed. Whether it is poorly worded or achieves its desired purpose or just creates chaos, as the City argues, is not directly part of the analysis, although it may bear on some of the factors.

*Guideline 1 - Does the Rezone Petition create new law or policy?*

Under the first guideline, the proposed rezoning ordinance does not create new law.

While the proposed ordinance would technically result in new law if adopted, that is true of any ordinance proposed through the initiative petition process. See *Peterjohn*, 62 Kan. App. 2d at 762. So the fact that the proposed ordinance has provisions in it that are different from existing law, misses the point. Zoning ordinances cannot be considered in isolation but must be considered with the overall plan. *McAlister*, 289 Kan. at 414.

The City already has a comprehensive set of extensive zoning regulations, which include general procedures for proposed zoning changes. See P.V.M.C. §§ 19.52 et seq. Thus, a proposed ordinance that creates a definition of rezoning contrary to the common and universally used definition of the term and constrains the governing body's ability to initiate rezoning consistent with its overarching ordinances and Plan, would be directing

27

the execution of the city's existing laws, making it administrative. We share the district court's view that the restrictions that exist in the proposed ordinance serve as a "constructive bar" to the City's existing ability to execute its existing policies. This weighs in favor of considering the proposal administrative rather than legislative.

And this is consistent with what we find to be similar to controlling and persuasive Kansas cases.

In *City of Lawrence v. McArdle*, 214 Kan. 862, 863, 522 P.2d 420 (1974), the electors submitted a proposed ordinance seeking the "equalization of firemen's salaries with those of policemen" within the same pay classification. The *McArdle* court said a comprehensive plan or policy regarding the personnel administration of city government, which also considered the city's financial resources, tax potential, and a unified budget, would be legislative. In contrast, the court said an ordinance to equalize only firemen's pay, which dealt with a segregated portion of the city's personnel, was administrative in nature. See 214 Kan. at 866, 871-72. Likewise, here, the electors seek to address only one issue—the treatment of accessory buildings in R-1 zoning districts—in a much larger legislative scheme.

In *McAlister*, 289 Kan. at 413-14, the Supreme Court found that a petition that sought to restrict rezoning in Fairway and prohibit it from rezoning residential property for certain purposes, was not a new law, but rather pertained to "a segment of the City's existing development plans and ordinances and would prevent the City's execution of its existing law," making it administrative in character.

Similarly, in *City of Wichita v. Fitzgerald*, 22 Kan. App. 2d 428, 434, 916 P.2d 1301 (1996), a panel of this court held that that the fact that the proposed ordinance would repeal several existing zoning ordinances was sufficient to find that the ordinance proposed was administrative. Although the ordinance in the Rezone Petition does not

28

expressly repeal any existing ordinances, according to the declaration of Chris Brewster, it is inconsistent and in conflict with many other provisions of the existing zoning code, as well as internally inconsistent and with poorly defined terms.

The *City of Wichita v. Fitzgerald* case similarly distinguished zoning changes specific to particular classifications to changes to a comprehensive plan.

> "Thus, where a comprehensive zoning ordinance has been passed and the power to change certain zoning or grant exemptions has been committed to the mayor or city council, the zoning of particular property is an administrative matter. Conversely, the passing of the general comprehensive zoning plan is typically legislative. [Citations omitted.]" 22 Kan. App. 2d at 434.

*Guideline 2 - Does the Rezone Petition declare a public purpose and provide a means to accomplish that purpose?*

Under the second guideline, PV United suggests this court cannot exercise meaningful appellate review because the district court's ruling was conclusory. However, we exercise unlimited review. Given that the facts are undisputed, we are perfectly capable of determining the application of Guideline 2.

PV United is correct that the Rezone Petition states the public purpose of the proposed ordinance was "to allow owners of land to have control over the zoning of their land, and those nearby to have notice, opportunity to be heard, and protest if something is done which may impact their quiet enjoyment of their single family dwelling." But the proposed ordinance is not legislative simply because its states a public purpose. First, "quiet enjoyment" is but one feature of property ownership, meaning the proposed purpose only affects a small segment of the overall policy of protecting the rights of property owners.

29

Moreover, the Rezone Petition indicates that it is an ordinance that would limit "rezoning that would allow accessory dwelling units or other dwellings for more than one family to reside on a lot in a single family residential zoning district." Yet the proposed ordinance does not once mention accessory dwellings and where they are permitted or prohibited. In other words, the title of the ordinance, and its stated public purpose of allowing the quiet enjoyment of land by not allowing accessory dwelling units, does not provide or explain a means of accomplishing its stated public purpose.

This guideline weighs in favor of finding the proposed ordinance is administrative.

*Guideline 3 - Does the Rezone Petition intrude into areas of government requiring specialized training and expertise?*

Under the third guideline, the focus of the Rezone Petition was to limit the ability of the City to allow accessory dwelling units on R-1 properties without the approval of landowners or neighboring landowners, but it goes much farther. As PV United points out, the decision to rezone residential properties requires determining the "impacts of increased density" on the City, which includes "more street parking, stormwater runoff, trash, traffic, noise, utility burdens, school overcrowding, and increased rental housing increasing a transitory population." These are all examples of considerations that require specialized knowledge of municipal government, intimate knowledge of a city's fiscal responsibilities to all its citizens and its ability to meet those responsibilities, city engineering recommendations and impact, and the impact on numerous non-city services and social concerns. This alone establishes the need for specialized training.

Residents directly impacted by any zoning change certainly have legitimate concerns that must be taken into account by the city governing body, but so too do other related entities and the business community. A city must carefully weigh all of these. There is no better example of this than the requirements the Supreme Court outlined in

30

*Golden v. City of Overland Park*, 224 Kan. 591, 584 P.2d 130 (1978). When the decision goes from the broad development of a zoning scheme or comprehensive plan to the rezoning urged on specific tracts of land or the requirement for rezoning in particular zones, the governing body must weigh the evidence, balance the equities, apply the rules, consult the professionally prepared and adopted Plan, and resolve specific issues. It must consider the character of the property, the zoning and uses of property nearby, the suitability of the property for the restriction uses, the extent to which removal of the restriction would be detrimental to nearby properties, how long the property has remained vacant, and the gain to the public compared to the hardship of the property owner. See 224 Kan. at 596-98.

The proposed ordinance severely limits "'rezoning'" as "only refer[ring] to a change from a more restrictive zone to less restrictive zones," and gives a nonexclusive example of the wrong it is attempting to correct. But the language is not limiting and would apply city wide to all types of rezoning, thereby usurping the City's ability to do what it is required to do and what it has the special knowledge and expertise to do.

As a panel of this court pointed out in *Peterjohn*, specialized considerations such as these might have contributed to the Kansas Legislature's decision to delegate and entrust zoning actions to the city councils under K.S.A. 12-741. 62 Kan. App. 2d at 767 (referring to the Historic Preservation Act, K.S.A. 75-2715).

We conclude that this guideline also weighs in favor of finding the proposed ordinance administrative in nature.

*Guideline 4 - Does the Rezone Petition address matters of statewide concern?*

The subject of an ordinance is of statewide concern if the

31

> "'[L]egislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an "administrative" characterization, [and] hence is outside the scope of the initiative and referendum.'" *Rauh v. City of Hutchinson*, 223 Kan. 514, 519-20, 575 P.2d 517 (1978).

State law delegates the decision-making power to enact planning and zoning laws to cities. K.S.A. 12-741. The planning and zoning power of a municipality is derived solely from the grant contained in K.S.A. 12-741 et seq. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1032, 181 P.3d 549 (2008). The term "'zoning'" is defined broadly as the regulation or restriction of the location and uses of buildings and uses of land. K.S.A. 12-742(a)(10). "'[Z]oning regulations'" are defined as the "lawfully adopted zoning ordinances of a city." K.S.A. 12-742(a)(11).

Because the ordinance restricted the City's ability to rezone land, it impedes on the authority given by the Legislature to the City.

For example, K.S.A. 12-757(c)(2) legislatively gives a City the ability to rezone a property from a less restrictive to a more restrictive zoning classification when 10 or more contiguous or noncontiguous lots, tracts, or parcels of the same zoning classification having five or more owners of record submit an application. It also provides limits related to the protest petition process in such a situation. K.S.A. 12-757(c). Under the proposed ordinance, rezoning would be defined to only include changing a lot from a more restrictive zone to a less restrictive zone, requires it be only one lot at a time and only with the written consent of the owner.

In another example, K.S.A. 12-757(a) provides that any rezoning request that is in "accordance with the land use plan or the land use element of a comprehensive plan, shall be presumed to be reasonable." The proposed ordinance removes any consideration of the comprehensive plan.

Accordingly, the fourth guideline also weighs toward the proposed ordinance being administrative.

In sum, we agree with the decision of the district court and find that the ordinance proposed in the Rezone Petition is predominantly administrative and therefore cannot be adopted through the initiative process. K.S.A. 12-3013(e)(1).

v. THE CITY'S CROSS-APPEAL BASED ON THE VERIFICATION OF THE SIGNATURES

Although we do not need to address this issue given our decision that the Rezone Petition is not valid, we briefly note that the City's notice of cross-appeal only references the district court's ruling that "the 'Abandonment Petition' was appropriate for placement on the ballot." It is a fundamental proposition of Kansas appellate procedure that appellate courts only obtain jurisdiction over rulings identified in the notice of appeal. *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011); *In re Adoption of E.D.*, 57 Kan. App. 2d 500, 505, 453 P.3d 1202 (2019). Even though this court construes this requirement liberally and generally avoids dismissing an appellant's case for lack of jurisdiction based on technical violations of notice of appeal filing requirements, the City took care to specifically limit its notice of cross-appeal. Thus, we conclude, even though our other rulings make the City's claim irrelevant, we note that we lack jurisdiction to review this aspect of the City's cross-appeal.

B. *The Abandon Petition*

The City cross-appeals the district court's conclusion that the Abandon Petition substantially complied with the procedural requirements as to the form of the question. They argue that substantial compliance is insufficient and that K.S.A. 25-620 required the

33

Abandon Petition to include the phrase, "'Shall the following be adopted?'" preceding the proposition that voters would be asked to approve. We disagree.

The Abandon Petition stated as follows:

"PETITION FOR AN ELECTION OF THE CITY OF PRAIRIE VILLAGE, KANSAS TO VOTE ON THE ABANDONMENT OF THE MAYOR-COUNCIL FORM OF GOVERNMENT

"TO THE GOVERNING BODY OF THE CITY OF PRAIRIE VILLAGE, KANSAS:

"The City of Prairie Village shall submit the following question for ballot:

"Shall the City of Prairie Village, Kansas abandon the mayor-council form of government?"

The county counselor's advisory opinion disapproved of the Abandon Petition because it did not include the phrase: "Shall the following be adopted?" and the City asserts it was invalid for the same reason. We note that we give no deference to the county counselor's opinion. It is not binding on our determination.

A close examination of the statutes at issue resolves this question.

Whenever the law provides for an election on the adoption or the abandonment of any form of city government, the petition requesting the submission of the question must conform with the requirements of article 36 of chapter 25 of the Kansas Statutes Annotated. K.S.A. 12-184(c). Under K.S.A. 2024 Supp. 25-3602(b)(1), the *petition* must "[s]tate the question which petitioners seek to bring to an election in the form of a question as it should appear upon the ballot in accordance with the requirements of K.S.A 25-620 and 25-3601, and amendments thereto."

34

K.S.A. 25-620 states: "On the *ballot* there shall be printed the proposition or question to be voted on. Each proposition or question shall be preceded by the words, 'Shall the following be adopted?'" (Emphasis added.) This statute applies to the ballot, not the petition.

The only logical way to reconcile these statutes is by their clear and unambiguous language that the ballot must include the phrase, "Shall the following be adopted?" and the petition only needs to include the "proposition or question to be voted on."

Even so, if the petition states the title, number, and exact language of the ordinance and the title of the petition states, "'Shall the following ordinance . . . become effective?'" the form of the question is presumed to be valid. K.S.A. 25-3601(c). Because it is a rebuttable presumption, we must conclude that other language may also be acceptable. So even if these two statutes were not distinguishable by the document they target, the petition is still subject to a review for substantial compliance. See *Peterjohn*, 62 Kan. App. 2d at 756-57. The City has the burden of proving the language used is invalid. K.S.A. 25-3601(b).

To determine substantial compliance, we examine whether the petition includes the essential matters necessary to assure the objective of the statute has been met. See *Stueckemann v. City of Basehor*, 301 Kan. 718, Syl. ¶ 1, 348 P.3d 526 (2015).

The City's sole argument regarding substantial compliance is that in *Peterjohn* the distinction was between the statutory language, "'Shall the following be adopted?'" and the actual language, "'Shall the following ordinance . . . become effective?'" 62 Kan. App. 2d at 757. The City summarily concludes that in this case, "the required question was missing altogether." It provides no analysis of the sufficiency of the question that did appear on the petition, "Shall the City of Prairie Village, Kansas abandon the mayor-council form of government?" Accordingly, it has failed to meet its burden of proof.

35

The clear purpose of the statute is to make sure those signing the petition understand what they are signing. We can find no substantial difference between, "Shall the following ordinance become effective?" and, "Shall the City of Prairie Village, Kansas abandon the mayor-council form of government?" It contains all the information the signer needs.

We affirm the district court's finding that the Abandon Petition was in proper form to be placed on the ballot.

C. *The Adopt Petition*

PV United next challenges the district court's decision finding the Adopt Petition was not eligible to be submitted to the ballot. The district court concluded that the Adopt Petition "complied with the basics of K.S.A. 25-3601 and K.S.A. 12-184, however its failure to fully comply with K.S.A. 12-1039(b) and (c) is what prevents the Petition from being put forth before the voters." In other words, the court (1) found the form of the question substantially complied with the procedural requirements for ballot petitions, but (2) disapproved substantive aspects of the proposed changes, particularly that the Adopt Petition failed to establish the membership and terms of office of the new governing body and attempted to adopt a new form of government and a new city council at the same time. PV United's challenge concerns only the substantive portion of the court's decision.

i.    THE GENERAL PROCEDURE FOR A CITIZEN INITIATED ELECTION

As it applies here, K.S.A. 25-3601 requires that any petition for a city election be submitted to the county counselor for an advisory opinion "as to the legality of the form of the question contained on the petition." K.S.A. 25-3601(a). Although a necessary step, the petition can still be circulated for signatures or filed with the county election officer "prior to obtaining the advisory opinion required by this subsection." K.S.A. 25-3601(a).

36

A favorable advisory opinion creates "a rebuttable presumption that the form of any question . . . complies with the requirements of this act," while an unfavorable advisory opinion must "state specific grounds to support such determination." K.S.A. 25-3601(a).

"When any other statute imposes specific requirements which are different from the requirements imposed by K.S.A. 25-3601 et seq., and amendments thereto, *the provisions of the specific statute shall control*." (Emphasis added.) K.S.A. 25-3601(d). In addition, "[e]ach petition shall consist of one or more documents pertaining to a single issue or proposition under one distinctive title." K.S.A. 2024 Supp. 25-3602(a).

 ii. THE SPECIFIC REQUIREMENTS FOR A PETITION ADOPTING A NEW FORM OF GOVERNMENT

There are two statutes with specific requirements that apply to the Adopt Petition: K.S.A. 12-184 et seq. and K.S.A. 12-1039 et seq.

The statutory authority for a petition proposing a ballot question on the adoption of any form of city government is K.S.A. 12-184. One of those forms of government is the mayor-council-manager form of government that PV United seeks. K.S.A. 12-184b(a)(4).

K.S.A. 12-1039(a) allows any city to adopt the mayor-council-manager form of government "in the manner herein provided." A petition proposing a ballot question on the adoption of any manager form of government:

> "[S]hall be headed 'Petition for an election of the city of _____, Kansas, to vote on the adoption of the _____ (commission-manager, mayor-council manager or council manager) form of government.' and shall be addressed to the governing body of the city, and be filed with the election officer of the county in which the city is located." K.S.A. 12-1039(a).

37

This statute further provides that a petition proposing the adoption of a manager form of government "shall establish the membership and terms of office of the governing body." K.S.A. 12-1039(b).

Finally, "[i]f a majority of the votes cast shall be in favor of adopting the . . . mayor-council manager . . . plan of government, then at the next regular city election the governing body of the city shall be elected as provided in the resolution or petition." K.S.A. 12-1039(c).

### iii. THE TEXT OF THE ADOPT PETITION

Shall the City of Prairie Village, Kansas, adopt the mayor-council-manager form of government and become a city operating under such form of government?

Pursuant to K.S.A. 12-1039(b), the membership of the Prairie Village City Council under the new mayor-council-manager form of government shall be one member from each of the six wards plus an at large mayor, all with staggered terms as follows:

"Only the 2023 elected City Council member from each ward shall continue to serve in the new City Council along with the currently elected at large Mayor. Those 2023 elected City Council members from Wards 1, 2, and 3 shall serve four year terms, while those 2023 elected City Council members from Wards 4, 5, and 6 as well as the current at large Mayor shall serve two year terms. Thereafter, all wards will elect just one member to the City Council to serve four year terms."

38

iv.    THE DEFICIENCIES IN THE ADOPT PETITION

a. *Failure to set out the mayor's term of office as required by K.S.A. 12-1039(b)*

The Adopt Petition sets out the membership and terms of office of all the members of the governing body, except the mayor. It fails to state what the mayor's term of office will be in the same manner it does other councilmembers. PV United does not contest the fact that the Adopt Petition omits the mayor's term, instead it asserts that existing laws would fill in that gap in the petition. See Prairie Village Municipal Code § 6-106(a) (setting mayor's term of office at four years). PV United asserts the statute only requires a petition to state the terms of office for the "first governing body," not "in perpetuity" for "successive governing bodies." They correctly point out the new governing body would still have the power to change the mayor's term of office by ordinance. See K.S.A. 12-184b(c)(2); K.S.A. 12-1040(a). This is basically a "no harm, no foul" approach.

We recognize along with the *Peterjohn* panel, that courts should exercise extreme caution when rejecting citizens' initiative or referendum petitions on mere technicalities. 62 Kan. App. 2d at 756. And if this were the only problem with the Adopt Petition we may be tempted to overlook it. But we need not make that determination, because it is the related issues of the complete restructuring of the duties of the council and mayor without outlining those changes in the Adopt Petition, and the implications of K.S.A. 12-1039(c) that moves beyond the realm of technicalities.

b. *Addressing more than one issue is prohibited by K.S.A. 2024 Supp. 25-3602(a).*

Under K.S.A. 2024 Supp. 25-3602(a): "Each petition shall consist of one or more documents pertaining to a single issue or proposition under one distinctive title." Although the question posed on the Adopt Petition is whether the City should adopt the

39

mayor-council-manager form of government, the proposed ordinance does much more than that. And it does so without advising the potential signatories of the extent of changes over and above the change in the form of government.

The opening sentence of the Adopt Petition described the "Prairie Village City Council under the new mayor-council-manager form of government" as "one member from each of the six wards *plus an at large mayor*." (Emphasis added.) Under Kansas law, the mayor is not a member of the city council but is "considered part of the city governing body for the purpose of voting on the passage of a charter ordinance." K.S.A. 12-104; see also P.V.M.C. § 1-201 ("The governing body shall consist of a mayor and city council to be elected as set out in chapter 6 of this Code."). Moreover, in Prairie Village, the mayor currently has veto powers over "any ordinance passed by the council," except "with respect to ordinances on which he or she casts the deciding vote and appropriation ordinances." P.V.M.C. § 1-905. But based on the plain language of the Adopt Petition, the mayor would now be a member of the city council, presumably with powers to vote as an equal member of the council.

There are also existing inconsistent or conflicting ordinances establishing the form of government, membership of the governing body, terms of office, and how the governing body conducts its business. See, e.g., P.V.M.C. § 1-201 ("The governing body shall consist of a mayor and city council to be elected as set out in chapter 6 of this Code."); P.V.M.C. § 1-204 (requiring quorum of eight councilmembers "to do business" of the governing body); P.V.M.C. § 1-804(a) ("The council committee of the whole shall consist of the 12 members of the city council and the mayor."); P.V.M.C. § 1-905 (giving mayor veto powers); P.V.M.C. § 6-106(a) (setting four-year terms of office for all city officials elected after November 6, 2019). All of these ordinances would need to be amended or repealed and replaced if the Adopt Petition were approved by a majority of the voters, so it is not unreasonable that the Legislature intended to require a petition

40

seeking to adopt a new form of government to address how existing ordinances will be affected by the transition and provide a solution.

That said, the petition does not need to anticipate every possible conflict with existing ordinances because other applicable statutes provide that "[a]ll existing ordinances and charter ordinances relating to a city's form of government . . . shall remain in effect until amended or repealed by such city" when a new form of government is adopted. K.S.A. 12-184a(b). Moreover, as PV United points out, the governing body retains the power to address any conflicts that arise by passing new ordinances. See K.S.A. 12-184b(c); K.S.A. 12-1039(a). But on these facts, some changes proposed by the Adopt Petition were either unnecessary to carry out the proposition to adopt a new form of government or unclear, particularly those relating to the mayor's role in the governing body. These changes would need to be implemented by amending or repealing ordinances beyond the scope of the proposition to adopt a new form of government.

In sum, K.S.A. 12-1039(b) requires a petition seeking a proposition to adopt a new form of government to establish basic requirements—like the membership and terms of office for all members of the governing body—to be valid. But the statute does not allow such a petition to propose changes to the structure of the governing body or the powers of its members without clearly establishing in the petition how existing ordinances must be changed.

c. *The proposed ordinance conflicts with K.S.A. 12-1039(c).*

Based on its language, it was clear the Adopt Petition ordinance was to be on the November 2023 ballot. Again, some background is necessary to gain context to this, the most serious problem with the Adopt Petition.

41

Prairie Village has 12 council members, 6 of those positions were up for election in 2023. The Adopt Petition provides that the form of government should be changed and "*[o]nly* the 2023 elected City Council member from each ward shall continue to serve in the new City Council." (Emphasis added.) In other words, the Adopt Petition changed the form of government *and* elected the new city council, apparently removing the remaining six council members, elected to a four-year term in 2021, from office. So this did not just change the form of government, it elected that new government.

This is contrary to the unambiguous and plain language of K.S.A. 12-1039.

The statute has three parts. Subsection (a) enables a citizen petition to change the form of government to a mayor-council-manager system, requires it be put before the voters at a city primary or general election, and sets out the general form of the ballot question. Subsection (b) outlines that it must establish the membership and terms of office of the governing body. And finally, Subsection (c) states that "[i]f a majority of the votes cast shall be in favor of adopting the [ mayor-council-manager] plan of government, then at the next regular city election the governing body of the city shall be elected as provided in the resolution or petition."

It is clear. The governing body is not selected at the same time as the ordinance changing the form of government. Section (c) allows the electorate to have time to adjust to the change in government, including any necessary or desired collateral ordinance changes and for candidates to announce their candidacy for the new form of government.

PV United asserts the "effective date" of the new form of government happens upon the certification of the election and Kansas law does not prohibit a petition from specifying that council members elected at the November 2023 election would remain in their positions under the new form of government. We do not find this argument persuasive in light of the plain and unambiguous language of the statute.

42

Although not directly applicable to the Adopt Petition, other statutes provide some guidance on how a petition must handle the transition to a different form of government. For instance, K.S.A. 12-1041 states when voters approve a proposition to abandon any of the manager forms of government, "the city shall operate under the *alternative form of government* established in the . . . petition." (Emphasis added.) In other words, a petition to abandon a manager form of government necessarily must establish an alternative form of government. Similarly, K.S.A. 12-10a01 states when voters approve a proposition to adopt a modified mayor-council form of government,

> "then at the next regular city election the mayor and members of the council hereinafter provided for as constituting the governing body of the city shall be elected as provided herein; and upon their election and qualification the rights, powers and duties of the commissioners or mayor and members of the council of such city shall cease and terminate."

Granted, although these statutes give some guidance as to the legislatively mandated process to effectuate a change in the form of government, we recognize they apply to different circumstances.

Even so, an election on a proposition to adopt a new form of government is considered a "'[q]uestion submitted election'" under Kansas law. K.S.A. 25-2104(a) ("'Question submitted election' means any election at which a special question is to be voted on by the electors of the state or a part of them."). This differs from a "'[c]ity election.'" K.S.A. 25-2103 ("'City election' means the election of such city officers as are provided by law to be elected."). This distinction matters because a question submitted election on whether to adopt a new form of government can occur "at any primary or general election" under K.S.A. 12-1039, while K.S.A. 12-1039(c) requires the members of the governing body to be elected at "the next regular city election." By definition, "the next regular city election" must be a general election because members of the governing body are not elected at a primary election.

43

Thus, the Adopt Petition violated Kansas law by purporting to have voters approve adopting a new form of government *and* electing the members of the governing body under that new form of government at the same election. The plain language of the statute requires the members of the governing body to be elected at the next regular city election following the approval of a proposition adopting a new form of government.

For these reasons, the district court did not err in concluding that the Adopt Petition was invalid to be included on the November 2023 ballot.

### v. THE CITY'S CROSS-APPEAL ON THE FORM OF THE QUESTION IN THE ADOPT PETITION

The City also argues on cross-appeal that the district court erred in concluding the form of the question on the Adopt Petition substantially complied with the procedural requirements. Because the City failed to include this in its notice of appeal, we lack jurisdiction to consider this argument.

It is a fundamental proposition of Kansas appellate procedure that appellate courts only obtain jurisdiction over rulings identified in the notice of appeal. *Associated Wholesale Grocers, Inc.*, 293 Kan. at 637; *In re Adoption of E.D.*, 57 Kan. App. 2d at 505. Even though this court construes this requirement liberally and should avoid dismissing an appellant's case for lack of jurisdiction based on technical violations of notice of appeal filing requirements, the City took care to specifically limit its notice of cross-appeal. Although the City combines discussion of this issue with its identical challenge based on the Abandon Petition, the notice of cross-appeal only references the district court's ruling that "the 'Abandonment Petition' was appropriate for placement on the ballot."

44

In sum, we affirm the district court's opinion on each issue, with the exception of the failure to remove Sharp as an individual and representative defendant. We reverse that decision and order Sharp removed as a defendant.

Affirmed in part and reversed in part.